## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUSAYBA HAMMAD, ERIC HOROWITZ, SAJIA HANIF, ALE HUMANO, JESSIE DESSUS, NIA WILSON, HENRY BURG, SHIVANI DESAI, | |
| *Plaintiffs,* | Civil Action No. _____ |
| v. | |
| WILLIAM C. THOMPSON, JR., SANDRA WILKIN, MICHAEL ARAVANITES, HENRY T. BERGER, UNA S. T-CLARKE, LORRAINE CÓRTEZ VÁZQUEZ, BARBARALEE DIAMONSTEIN-SPIELVOGEL, KEVIN D. KIM, MAYRA LINARES-GARCÍA, ROBERT F. MUJICA, BRIAN D. OBERGFELL, JILL O'DONNELL-TORMEY, HERMINIA PALACIO, KEN SUNSHINE, ANGELO VIVOLO, JOHN VERZANI, SALIMATOU DOUMBOUYA, Members of the Board of Trustees, City University of New York, | |
| FÉLIX MATOS RODRÍGUEZ, Chancellor, City University of New York, | |
| SUDHA SETTY, Dean, School of Law, City University of New York, | |
| *Defendants, all sued in their official capacities.* | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.   Plaintiffs are a diverse group of law students who bring this action under the First Amendment, in order to challenge Defendants' denial of access to the customs of enabling graduating students to hear a peer speak at their commencement ceremony, select that peer through a nomination process, and have a graduation ceremony that Defendants live-stream or record and post online.

2.   Plaintiffs have chosen legal education as a pathway to doing advocacy that can advance social justice. The law school they attend, the City University of New York School of Law ("CUNY Law" or "the law school"), was founded over forty years ago with that goal in mind. It is currently ranked the number one public-interest law school in the country and is the most diverse law school in the nation. Its diversity is in keeping with that of its twenty-four sibling campuses under the umbrella of the City University of New York ("CUNY"), the largest urban public university in the United States.

3.   Like for so many students of higher education, graduation for Plaintiffs will be the singular culmination of a shared educational experience marked by deep personal and interpersonal investment and sacrifice. As a matter of custom, graduating students of CUNY Law have typically been able to be represented by a graduating peer at commencement, have gotten to select that peer through a nomination process, and have gotten to have the law school live-stream or record and post the event. The student speakers typically have used their platform at commencement to express personal perspectives on what the law school's motto of "law in the service of human needs" means to them—including and especially in reference to the most pressing human needs of the time.

2

4.   In the view of Plaintiffs and many other students of CUNY Law, the human needs of the Palestinian people—who are facing famine, displacement, and overwhelming state violence that many observers recognize as amounting to genocide—are among the most pressing human needs imaginable. In recent months, ongoing Israeli military violence has been devastating Palestinians—to date killing over 34,000 people in the Gaza Strip ("Gaza"), including over 13,800 children, and wounding over 77,000 people in Gaza, including over 12,000 children.

5.   The devastation includes what rights experts refer to as "scholasticide," meaning the systemic destruction of the Palestinian education system. As of April 18, 2024, more than 5,479 students, 261 teachers, and 95 university professors have been killed in Gaza, and over 7,819 students and 756 teachers have been injured. At least 60% of educational facilities, including 13 public libraries, have been damaged or destroyed, and at least 625,000 students have no access to education.

6.   Plaintiffs and other CUNY Law students are not alone in their perspective that the catastrophic state violence against Palestinians is among the most pressing issues of our time. Their predecessors shared that view, electing student speakers for commencement in May 2023 and May 2022 who used the student-speaker platform at commencement to express support for Palestinian lives and freedom.

7.   The remarks of those student commencement speakers led to widespread and intense public attention and debate. The debate centered around viewpoints that support Palestinian lives and freedom or that otherwise criticize the Israeli state, its policies and practices, or the political ideology of Zionism. Within that debate, many people, including Plaintiffs, understand such criticisms to sound in anti-racist values and an abiding belief in the collective and shared nature of freedom and wellbeing for all people.

3

8.   In the aftermath of the speeches of the law school's 2022 and 2023 student speakers for commencement, people opposed to the speeches' content demanded, among other things, the resignation of Defendants or the termination or revocation of their involvement in the CUNY system. Some of those public outcries offered an exit ramp of capitulation to assorted other demands, including the termination of the student-speaker custom at the law school's commencement ceremonies.

9.   In other words, some of Defendants' critics expressed willingness to be mollified by steps short of Defendants' termination, such as de-platforming CUNY Law student commencement speakers.

10. Defendant Setty, in concert with or under the influence of the other Defendants, did deny Plaintiffs and their peers access to the student-speaker and live-streaming/recording customs for the law school's commencement ceremonies. In turn, Plaintiffs and their peers have spent this academic year urging the reinstatement of these customs and have otherwise confronted repression on campus in order to undertake ongoing activism in support of Palestinian lives and freedom. Defendant Setty has not demonstrated to them any willingness to reverse the decisions to deny them access to the student-speaker and live-streaming/recording customs.

11.   Plaintiffs' experiences are not unique. As the movement for Palestinian lives and freedom has grown in the United States, so, too, have efforts to suppress it. From 2014–20, Palestine Legal responded to 1,707 incidents targeting speech for Palestinian rights, observing across them a variety of repressive practices in colleges and universities, including censorship, restrictions on academic freedom, discriminatory imposition of bureaucratic barriers to speech and association, and discriminatory application of administrative sanctions on speech and association.

12. The First Amendment roundly protects freedom of speech within public institutions like CUNY, irrespective of viewpoint, and subject only to very narrow limitations. Its protections are especially critical in a setting like the law school, which is supposed to train students like Plaintiffs to engage critically with opposing and often charged viewpoints that abound in legal advocacy. Instead of affording Plaintiffs access to the same customs their predecessors enjoyed of getting to nominate a peer to speak at graduation, getting to hear a peer speak at graduation, and having Defendants live-stream or record and publicly archive footage of the graduation ceremony, the celebratory culmination of their training and education—Defendants are precluding that access based on viewpoint discrimination and retaliation in violation of the First Amendment. Plaintiffs respectfully urge the Court to intervene and remedy the resultant repression they face.

13. **JURISDICTION AND VENUE**

14. This Court has jurisdiction under U.S. Const. amends. I, XIV; 28 U.S.C. §§ 1331, 1343, 2201, 2202; and 42 U.S.C. § 1983.

15. Venue lies in this district under 28 U.S.C. § 1391(b).

**PARTIES**

16. Plaintiff Nusayba Hammad is a student of the law school in her final year of its full-time program and due to graduate on May 23, 2024. Nusayba's ethnicity is Palestinian.

17. Plaintiff Eric Horowitz is a student of the law school in his final year of its full-time program and due to graduate on May 23, 2024. Eric is Jewish.

18. Plaintiff Sajia Hanif is a student of the law school in her final year of its full-time program and due to graduate on May 23, 2024. Sajia is Muslim and Afghan.

5

19. Plaintiff Ale Humano is a student of the law school in the final year of its part-time program, is due to graduate in December 2024, and is due to participate in the law school's May 23, 2024, commencement ceremony. Ale's ethnicity is Latinx.

20. Plaintiff Jessie Dessus is a student of the law school who is two years into its part-time program and due to graduate in 2026. Jessie is a first-generation Puerto-Rican American.

21. Plaintiff Nia Wilson is a student of the law school who is two-and-a-half years into its full-time program and due to graduate in December 2024. Nia's ethnicity is East Asian.

22. Plaintiff Henry Burg is a first-year student of the full-time program of the law school and due to graduate in 2026. Henry is Jewish.

23. Plaintiff Shivani Desai is a first-year student of the full-time program of the law school and due to graduate in 2026. Shivani's ethnicity is South Asian.

24. Defendant William C. Thompson, Jr., is the Chairperson of the CUNY Board of Trustees and is sued in his official capacity.

25. Defendant Sandra Wilkin is the Vice Chairperson of the CUNY Board of Trustees and is sued in her official capacity.

26. Each of the following Defendants is a Trustee of the CUNY Board of Trustees and is sued in his/her official capacity: Michael Arvanites, Henry T. Berger, Una S. T-Clarke, Lorraine Córtez-Vázquez, Barbaralee Diamonstein-Spielvogel, Kevin D. Kim, Mayra Linares-Garcia, Robert F. Mujica, Brian D. Obergfell, Jill O'Donnell-Tormey, Herminia Palacio, Ken Sunshine, Angelo Vivolo, John Verzani (*ex officio*), and Salimatou Doumbouya (*ex officio*).

27. The CUNY Board of Trustees as a whole is responsible for governing and administering CUNY, has sole control of CUNY's educational work, and governs and administers all educational units of CUNY. N.Y. Educ. Law § 6204(1).

28. Defendant Félix Matos Rodríguez is the Chancellor of CUNY and is sued in his official capacity. As Chancellor, Defendant Matos is the chief executive, educational, and administrative officer of CUNY; the chief educational and administrative officer of the law school and all other senior and community colleges and other educational units and divisions for which the CUNY Board acts as Trustees; and is subject to the authority of the Board of Trustees. *See* CUNY Bylaws, Article XI.

29. Defendant Sudha Setty is the Dean of CUNY Law School and is sued in her official capacity. As Dean, Defendant Setty serves as the executive officer for the law school and is responsible for conserving and enhancing its educational program and providing leadership to the law school community for the purpose of achieving those ends. In her role at the law school, Defendant Setty is subject to the authority of both the Chancellor and the Board of Trustees. *See* CUNY Bylaws, Articles XI, XVII.

## FACTUAL ALLEGATIONS

*Customary Student-Speakers at CUNY Commencement Ceremonies*

30. As a matter of custom, practice, and/or policy, Defendants have routinely permitted the graduating classes of many CUNY campuses, including the law school, to have a graduating classmate speak at their respective commencement ceremonies.

31. As a matter of custom, practice, and/or policy, Defendants have routinely enabled the graduating classes of some CUNY campuses—including the law school, the Craig Newmark Graduate School of Journalism ("the journalism school"), and the CUNY School of Professional

Studies ("the professional-studies school")—to select a graduating classmate to speak at their respective commencement ceremonies.[1]

32. At the law school, this custom, practice, and/or policy has extended to the graduating classes of both the full-time and part-time programs, enabling each to select a student speaker for commencement.

***Customary Live-Streaming and/or Recording and Posting of CUNY Commencement Ceremonies***

33. As a matter of custom, practice, and/or policy, Defendants have routinely live-streamed through CUNY media and/or recorded and posted online for public consumption via CUNY media the commencement ceremonies of many CUNY campuses, including those of the law school.[2]

***Changes as of This Year for CUNY Law School's Commencement***

34. As of this academic year, Defendants are denying access to the custom, practice, and/or policy of live-streaming and/or recording and posting online for public consumption via CUNY media the commencement ceremony of students graduating from the full-time and part-time programs of the law school.

---

[1] *See, e.g.*, CUNY School of Law, *#1 Public Interest Law School Delivers the Next Generation of Social Justice Advocates to the Legal Profession*, May 13, 2021 (referencing 2021 student speaker); CUNY School of Law, Facebook post, May 15, 2020 (referencing 2020 student speaker); CUNY School of Law, Twitter post, May 17, 2019 (referencing 2019 student speaker); CUNY School of Law, Facebook post, May 11, 2018 (referencing 2018 student speaker); CUNY School of Law, *CUNY Law Celebrates the Class of 2017*, May 18, 2017 (referencing 2017 student speaker); CUNY School of Law, *CUNY Law Celebrates the Class of 2016*, May 11, 2016 (referencing 2016 student speaker).

[2] *See, e.g.*, CUNY School of Law, Event Calendar, *Commencement 2023*, May 12, 2023 (includes link entitled "Watch Livestream," although the content is no longer accessible); CUNY School of Law, Event Calendar, *CUNY School of Law 37th Commencement*, May 13, 2022 ("The ceremonies will be livestreamed for loved ones and families."); CUNY School of Law, Event Calendar, *CUNY School of Law 36th Commencement*, May 14, 2021 (bottom of page referencing livestream link);  CUNY School of Law, Facebook post, May 9, 2020 (referencing live-streaming of May 15, 2020, YouTube event to honor graduating students); CUNY School of Law, Facebook post, May 17, 2019 ("A reminder for those who cannot make it — we'll be live-streaming Class of 2019's Commencement here.").

35. As of this academic year, Defendants are denying access to, for the full-time and part-time programs of the law school, the custom, practice, and/or policy of routinely permitting their graduating classes to select a graduating classmate to speak at commencement.

36. As of this year, Defendants are not allowing any student speakers at the law school's commencement, not even speakers selected or designated by the law school's faculty or administration.

37. The custom, practice, and/or policy of permitting the graduating classes of the journalism school and of the professional-studies school to select a graduating classmate to speak at commencement remain in place.[3]

38. The custom, practice, and/or policy of other CUNY campuses to have a student speaker at commencement remain in place.[4]

39. The custom, practice, and/or policy of other CUNY campuses to live-stream their commencement ceremonies and/or record and post them online for public consumption via a CUNY website and/or social-media account remain in place.[5]

***Anti-Palestinian Repression Driving Changes to CUNY Law's Commencement***

40. The repression of Palestine solidarity speech is often driven by deliberate conflation of vocal support for the lives and freedom of Palestinians and criticisms of Israeli state practices with

---

[3] *See, e.g.*, CUNY Craig Newmark Graduate School of Journalism, *Rachel Maddow to Deliver 2023 Newmark J-School Commencement Address*, Sep. 5, 2023 ("The student speaker, chosen by the Class of 2023, and alumni speaker will be announced in October."); CUNY School of Professional Studies, *CUNY SPS Commencement Ceremony Livestream Recording – May 25, 2023*, YouTube, June 2, 2023 (introduction of 2023 student-selected speaker at 00:38:00).

[4] *See, e.g.*, CUNY Craig Newmark Graduate School of Journalism, *Commencement 2023* (announcing student-selected speaker for 2023 commencement).

[5] *See, e.g.*, n. 3, *supra* (linking to video recording of December 2023 commencement posted by the professional-studies school).

anti-Jewish hatred. This conflation delegitimizes and provides justification for the repression of principled speech on urgent political and moral questions related to Palestine.

41.   As detailed below, repression of speech related to Palestine, which amounts to a Palestine exception to free speech protections, have driven the changes this year to the law school's commencement and result from a steady and escalating campaign against viewpoints of members of the law school community who support the lives and freedom of Palestinian people, including and especially the student speakers at the law school's May 2022 and May 2023 commencement ceremonies.

*Campus  Support of Palestinians and Related Backlash in the Lead-up to May 2022 Commencement*

42. On December 2, 2021, two student groups on the law school campus, Students for Justice in Palestine and the Jewish Law Students Association, sponsored a resolution backing the global campaign for boycott, divestment, and sanctions ("BDS") against the state of Israel. The resolution articulates BDS to be a form of resistance against apartheid and oppression to which the state of Israel subjects the Palestinian people. Twenty other CUNY Law student groups endorsed it.

43. On December 10, 2021, Defendant Matos publicly disavowed the BDS resolution, stating that it does "not represent the views of CUNY."

44. On December 14, 2021, a public letter helmed by Inna Vernikov, a self-identified Zionist and member of the New York City Council, thanked Defendant Matos for his disavowal of the BDS resolution, calling the resolution "treacherous" and claiming it to be discriminatory against Jewish people—eliding the resolution's co-sponsorship by the Jewish Law Students Association.

45. On May 12, 2022, the day before commencement, many faculty of the law school expressed their support of the students' BDS resolution.

*Pro-Palestinian May 2022 Student Commencement Speech and Resulting Public Reactions*

46. At the May 13, 2022, commencement ceremony of the law school, the speech of the student speaker included criticism of the state of Israel and support for the lives and freedom of the Palestinian people, uplifting the BDS resolution supported by both students and faculty of the law school. Selected by her graduating classmates, the speaker was ethnically Palestinian, brown-skinned, and Muslim, wearing a hijab at the ceremony.

47. Per the custom, practice, and/or policy at the time, Defendants live-streamed and/or recorded for public consumption via a CUNY website and/or CUNY social media account the May 2022 commencement ceremony of the law school, including the speech of the student speaker.

48. The student's speech drew widespread public attention and debate, including condemnation from self-identified Zionists and from right-wing political figures who maligned the speaker and her speech as putatively antisemitic, among other things. The public commentary includes inflammatory labels for this student that reflect anti-Palestinian, anti-Arab, and anti-Muslim racism and dehumanization.

49. On May 27, 2022, Councilwoman Vernikov pulled $50,000 of funding from the law school because of the putative antisemitism of its student speaker's speech and of the BDS resolution supported by both law students and faculty.

50. On May 30, 2022, Defendant Matos disavowed the BDS resolution of the law students and faculty, emphasizing that the viewpoints reflected in it and in the speech of the law school's student commencement speaker "do not represent the views of CUNY or those of the University community as a whole."

51. In June 2022, a committee of the New York City Council, including Councilwoman Vernikov, held a hearing on putative antisemitism within the CUNY system, which Defendant

Matos did not attend. He had twice canceled his scheduled appearance at the hearing, and sent, instead, other CUNY officials—which drew public criticism and ire, including from Councilwoman Vernikov, who called for Defendant Matos's immediate resignation if he did not meet with her.

52. In July 2022, a group called CUNY Students and Faculty for Equality ("SAFE CUNY") submitted to the New York City Commission on Human Rights, the New York State Division of Human Rights, and the American Bar Association complaints against the BDS resolution supported by the students and faculty of the law school. SAFE CUNY publicized these complaints, which received news coverage.

53. SAFE CUNY advocates for the interests of Zionist students and faculty of CUNY, and its co-founder is Jeffrey Lax, a professor at Kingsborough Community College of CUNY.

54. In March 2023, SAFE CUNY issued and publicized a report on putative antisemitism at CUNY with references to the BDS resolution supported by the law students and faculty and to the May 2022 speech of the law school's student commencement speaker.

*Pro-Palestinian May 2023 Student Commencement Speech and Resulting Public Reactions*

55. For its May 2023 commencement, the law school secured Eric Adams, the Mayor of New York City, as a speaker. During his remarks, many graduating students in the audience stood up and turned their backs to him, in protest for discriminatory and deadly policing in New York City under his leadership.

56. Like the speech of the student speaker at the law school's May 2022 commencement, the speech of the student speaker at the May 2023 commencement included criticism of the state of Israel and support for the lives and freedom of the Palestinian people. Like her predecessor, this student uplifted within her speech the BDS resolution supported by students and faculty of the law

school. She also strongly criticized New York City Mayor Adams for the problem of racist policing in New York City. Selected by her graduating classmates, this student speaker was ethnically Yemeni, brown-skinned, and Muslim, wearing a hijab at the ceremony.

57. Per the custom, practice, and/or policy at the time, Defendants live-streamed and/or recorded for public consumption via a CUNY website and/or CUNY social media account the May 2023 commencement ceremony of the law school, including the speech of the student speaker.

58. This student's speech drew more widespread public attention and debate than had that of her predecessor, and the public discourse about it includes more condemnation from self-identified Zionists and from right-wing figures maligning the speech and the speaker to be putatively antisemitic, among other things. Their commentary includes inflammatory labels for this student that reflect anti-Palestinian, anti-Arab, and anti-Muslim racism and dehumanization.

59. On May 30, 2023, the New York Post editorial board published an op-ed blaming Defendants for the speech of the student speaker at the 2023 law school commencement, stating "a new board (and change in administration across the system) is plainly in order."

60. On May 30, 2023, Defendants Matos and Thompson and Defendant members of the CUNY Board of Trustees issued a public statement that maligned as putative hate speech the comments of the student speaker at the 2023 law school commencement.

61. On May 31, 2023, the New York Post quoted CUNY Board of Trustees Defendants Vivolo and Clarke, who promised changes to CUNY graduations responsive to the furor over the 2023 CUNY Law student speaker's remarks.  On May 31, 2023, Mayor Adams chimed in, issuing a public statement maligning as putative hate speech the comments of the student speaker for the law school's May 2023 commencement.

62. In June 2023, Jeffrey Lax, CUNY Kingsborough Professor and founder of SAFE CUNY, also chimed in, resurrecting the failure of Defendant Matos to appear at a 2022 New York City Council committee hearing concerning putative antisemitism at CUNY. Professor Lax publicly claimed that Defendant Thompson had ordered Defendant Matos not to attend that hearing—which Defendant Thompson publicly disputed.

63. In the summer of 2023, assorted groups called publicly for federal and state probes into putative antisemitism at CUNY, including, respectively, Alums for Campus Fairness, which is a group that asserts and defends the interests of Zionist students, and twenty-one Republican New York State Assemblymen. A former member of the CUNY Board of Trustees also publicly lambasted Defendants Thompson and Matos for not having fired Defendant Setty because of the speech of the student speaker at the 2023 law school commencement.

64. In parallel, a variety of stakeholders publicly addressed Defendants, in order to express their support and defense of the 2023 student speaker. Among them were Jewish Voice for Peace, the Civil Rights Committee of the New York City Bar Association, thirteen civil rights and social justice organizations, the CUNY Professional Staff Congress, and faculty of CUNY Law and assorted other campuses.

65. Much of the support and defense voiced for the 2023 student speaker sounded in bedrock First Amendment principles. But on the heels of this public support for the student speaker followed further public condemnation of her, of others in the CUNY system sharing her viewpoints, and of Defendants—all rooted in the false equivalence that conflates support for Palestinian lives and freedom or criticism of the Israeli state and its practices with anti-Jewish hatred.

14

66. In August 2023, public outcry arose in response to CUNY's hiring of Marc Lamont Hill to serve as faculty at the CUNY Graduate Center. The controversy tied to his use of "from the river to the sea," which he and other people understand to constitute a call for justice and freedom for Palestinian people and "'not a call to destroy anything or anyone.'"

67. News outlets like The New York Post linked the controversy over Professor Hill's hire with the aftermath of the student-speaker issue of the law school; and, within a few weeks, the President of the CUNY Graduate Center stepped down, generating tenuous praise for Defendant Matos from the likes of Councilwoman Innikov, who had otherwise called for Defendant Matos's resignation or termination the year prior, following the controversy related to the 2022 CUNY Law student commencement speaker.

68. On August 2, 2023, Defendant Matos met with some community members to discuss with them, among other things, their concerns about CUNY, including the speech of the student speaker of the law school's 2023 commencement.

69. One of the attendees publicly remarked subsequently: "Last weekend, I had the opportunity to ask the CUNY Chancellor directly why there has not been direct consequences for the hate filled graduation speech at the Law school. While I was greatly disappointed with his response, he did pull me aside after for an honest conversation about further concrete actions that will take place to ensure Jewish students can feel safe on campus."

70. On September 12, 2023, a rally convened outside the office of Defendant Matos, organized as part of a campaign entitled #EndJewHatred, which was founded, in part, by The Lawfare Project, an organization that aims to advance and defend Zionism, which it describes as "the civil rights project of the Jewish people." In attendance at the rally were state and local lawmakers, including Councilwoman Innikov, as well as members of SAFE CUNY and the public.

71. In the lead-up to the rally, the #EndJewHatred campaign articulated and promoted specific goals and demands with respect to CUNY to be emphasized at the rally, including the demand that CUNY "address the systemic Jew-hatred at CUNY Law School" by pushing for the ouster or resignation of Defendant Setty and by "[d]iscontinu[ing] the practice of allowing students to select a commencement speaker." The campaign includes a web-form that the public can use to communicate these and other demands directly to Defendant Matos.

*Denial of Access to Student-Speaker Custom*

72. The next day, on September 13, 2023, within a faculty meeting at the law school, Defendant Setty alluded to the denial of access to the student-speaker custom from law school commencements as of this academic year.

73. The publicly available notes of a member of the law school's student government who attended the meeting shed light on the relevant dynamics and rationales, stating "[i]t is [] clear that CUNY Central has pushed no student speaker, and as a result the Dean does not seem to have much discretion over the administration's position."

74. The notes further convey that the decision had turned, at least in part, on the sense that "[n]o law school commencement can look like last year's," because its aftermath included Defendant Setty's having to deal with media scrutiny, "80 voicemails, 500 pieces of hate mail," losing donors, having to spend many hours a day contending with the law school's image, and needing increased campus security, among other things. The notes also indicate that, according to Defendant Setty, "CUNY Central had to put a lot of time and resources into navigating this," including contending with "numerous investigations," a complaint to the American Bar Association, and lots of freedom-of-information requests.

16

*Ongoing Student Efforts Seeking Reinstatement of the Student-Speaker Custom*

75. From the time of the September 2023 faculty meeting to date, many students of the law school, including Plaintiffs, have made repeated and ongoing attempts to engage with the law school administration to voice their concerns about the revocation of the student-speaker custom. Among the most recent examples of the students' efforts is a sign-on letter emailed on March 22, 2024, to Defendants Setty and Matos and signed by 81 of approximately 160 graduating full-time students of the law school, 19 graduating part-time students, 73 second-year students, and 57 first-year students.

76. Notwithstanding students' repeated and ongoing efforts to flag their concerns about the revocation of the student-speaker custom, Defendant Setty has remained unresponsive to those concerns. Many students understand that unresponsiveness to reflect the Defendants' discomfort with on-campus student activism in support of Palestinian life and freedom over the course of this academic year.

*Persevering On-Campus Activism in Support of Palestinian Life and Freedom*

77. Student activism this year in support of Palestinian freedom has been persevering under difficult circumstances, including on-campus repression resulting from increased police presence and selective enforcement of and lack of clarity in flyering protocols and practices, among other things.

78. The students' on-campus activism has spanned efforts including: a Palestine solidarity statement dated October 12, 2023, and signed by over 16 student groups of the law school; a variety of political actions held on and around the law school on/around October 19, 2023; a political action on campus in the form of a "die-in" on October 25, 2023, to bring attention to the over 6,000 civilians whom the Israeli military had killed in Gaza as of that time; a variety of on-campus

17

political actions held on November 29, 2023; a political action in the form of a sit-in on February 8, 2024; and another political action in the form of a walk-out on April 8, 2024.

79. Understandably, Plaintiffs and many other students of the law school believe that their on-campus activism this year for Palestinian freedom has led Defendants to stand firm in the denial of access to the student-speaker custom from law school commencements, for fear that, if given the chance, graduating students of the law school would, again, elect a student speaker to decry the devastating impacts of Israeli state violence on Palestinian lives.

*Denial of Access to Custom of Live-streaming and/or Recording and Posting of Commencement*

80. On or around April 16, 2024, Plaintiffs and their classmates learned through the publicly available notes of peers in student government that the law school would not be live-streaming or recording and posting the entirety of commencement this year; consistent with their other advocacy, concerned students have launched a poll in hopes of having the custom reinstated in time for this year's graduation.

*Varied Harms to Plaintiffs*

81. Defendants are collaborating to censor and punish disfavored speech and to privilege speech in opposition to it: a violation of Plaintiffs' First Amendment rights, demanding strict scrutiny by this Court.

82. Plaintiffs believe this constitutes viewpoint discrimination and retaliation for their predecessors' selection of pro-Palestinian commencement speakers and for their own on-campus activism at the law school.

83. Each Plaintiff, at various times to date, both on and off the law-school campus, has been visible and/or vocal (i) in their support for the lives and freedom of the Palestinian people and/or

(ii) in their criticism of Israeli state rhetoric, policies, and practices that they consider harmful to the lives and freedom of the Palestinian people.

84. The ways in which Plaintiffs have been visible and/or vocal span publicly offering their viewpoints on Palestine and Israel in the course of classes or discussions on campus, signing onto advocacy letters in support of Palestine that are distributed to the law school administration and other members of the law school community, attending on-campus events concerning Palestine, participating in on-campus political actions concerning Palestine, wearing a kuffiyeh (a checkered scarf associated with Palestine), and wearing clothing or jewelry that references Palestine.

85. Given the chance to nominate a student speaker under the custom, practice, and/or policy that applied to the law school until this academic year and that still applies to other CUNY campuses, Plaintiffs would nominate a graduating classmate who has been visible and/or vocal in support the lives and freedom of the Palestinian people and who has been critical of the rhetoric, policies, and practices of the Israeli government that have harmed the lives and freedom of the Palestinian people.

86. Many graduating students of the law school this year would do the same, as demonstrated by the wealth of visible and vocal support and activism on campus this academic year supporting Palestinian life and freedom.

87. For Plaintiffs, the chance to nominate a student speaker for commencement is deeply meaningful, enabling them to express a viewpoint about who among their peers would represent the student body meaningfully and offer resonant perspectives relevant to their shared journey as students and to the road ahead of them as advocates.

88. The chance to hear from a student speaker, no matter who is selected or what viewpoints they express, matters to Plaintiffs because it means getting to hear from a peer with a personal

connection to their law school experience, in contrast to dignitaries and other guest speakers from off-campus.

89. For every Plaintiff, live-streaming and/or recording and posting of the entirety of commencement by the law school offers a crucial chance for family, friends, and loved ones who are otherwise unable to join the event in person to be recognized by the law school as integral to the celebration of a momentous achievement that, in many instances, their support has enabled.

90. The denial of these opportunities has been painful for all of the Plaintiffs but especially so for Nusayba Hammad, who is Palestinian. She reports: "It is deeply distressing to know that because the last two graduating classes chose student commencement speakers who asserted my people's right to life and liberation, my class is being denied the opportunity to participate in what had been a cherished tradition. My identity, my right to life and freedom, and my family's right to life and freedom are somehow controversial to CUNY—advocating for us is considered troublesome and must be silenced. The link makes me feel like there's an air of suspicion over me from the administration and my classmates, like if it weren't for the previous speakers' statements advocating for my life and people, we would still be able to have this tradition."

91. As pled herein, Defendants have made and enforced decisions violating and infringing Plaintiff's First Amendment rights of freedom of speech, freedom of association, and the right to petition the government for redress of grievances.

92. Defendants Matos, Thompson, and Trustees of the CUNY Board of Trustees, by their failure to supervise and intervene, and/or by their procedural support and expressions on behalf of these infringements, have revealed a custom and practice of privileging the speech of others over Plaintiffs' and of retaliation for viewpoints supportive of the lives and freedom of Palestinians and critical of the rhetoric, policies, and/or practices of the state of Israel.

93. The speeches made by the 2023 and 2022 commencement speakers were First Amendment protected expression on matters of public concern, as are the speech and conduct reflected in Plaintiffs' visible and/or vocal on-campus support for Palestinian freedom.

94. Defendants discriminated against and punished these expressions by (1) taking away Plaintiffs' access to the custom of student-selected speakers at the law school's commencement ceremonies and (2) taking away Plaintiffs' access to the custom of live-streaming and/or recording and posting of the law school's commencement ceremonies.

95. There was a direct, immediate causal connection between the protected speech and Defendants' adverse actions.

96. Defendant's censorious actions interfere with Plaintiffs' right to petition the government for redress of grievances, as the speakers' plea for the protection of Palestinians included a request for U.S. government action.

97. Plaintiffs have suffered and will continue to suffer irreparable harm, in being denied access to the custom, practice, and/or policy of (1) allowing graduating students to select and hear from a graduating classmate at commencement and (2) live-streaming and/or recording and posting commencement for public consumption via a CUNY website and/or social-media account.

## CAUSES OF ACTION

### First Claim for Relief: 42 U.S.C. § 1983 (First Amendment)
*Denial of Access to the Student-Speaker Custom*

98. All students on public university campuses have the First Amendment right to speak, associate, and petition the government.

99. The First Amendment binds the State of New York pursuant to the incorporation doctrine of the Fourteenth Amendment. In all of the following paragraphs, references to the First

Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

100.     By denying Plaintiffs access to the custom of student speakers at commencement, Defendants violate their First Amendment rights of free speech, association, and petitioning the government by denying them opportunities under the custom (1) to nominate a graduating peer and (2) to hear from a graduating peer.

101.     Denying Plaintiffs access to the custom of student speakers at commencement censors and penalizes them on the basis of the contents and viewpoints of (1) the speech of the student speakers at the law school's May 2023 and May 2022 commencement ceremonies and/or (2) of Plaintiffs' own speech, associations, and/or expressive conduct at the law school.

102.     Viewpoint-based discrimination is presumptively unconstitutional in violation of the First Amendment, in any setting. Its harms are amplified in the university setting because they interfere with long-recognized academic freedom principles.

103.     Even if the student-speaker custom constitutes only a limited public forum, Defendants may not deny Plaintiffs access to that forum on the basis of their viewpoints or imputed viewpoints or the viewpoints of the student speakers at the May 2023 and May 2022 commencement ceremonies of the law school.

### Second Claim for Relief: 42 U.S.C. § 1983 (First Amendment)
*Denial of Access to the Custom of Live-streaming and/or Recording and Posting Commencement Online*

104.     By denying Plaintiffs access to the custom of live-streaming and/or recording and posting commencement online, Defendants violate their First Amendment rights of free speech, association, and petitioning the government.

105.     Denying Plaintiffs access to the live-streaming/recording custom censors and penalizes them on the basis of the contents and viewpoints of (1) the speech of the student speakers at the law school's May 2023 and May 2022 commencement ceremonies and/or (2) of Plaintiffs' own speech, associations, and expressive conduct at the law school.

106.     Viewpoint-based discrimination is presumptively unconstitutional in any setting. Its harms are amplified in the university setting because they interfere with long-recognized academic freedom principles.

107.     Even if the live-streaming/recording custom constitutes only a limited public forum, Defendants may not deny Plaintiffs access to that forum on the basis of their viewpoints or imputed viewpoints or the viewpoints of the student speakers at the May 2023 and May 2022 commencement ceremonies of the law school.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  Declare Defendants' denial of access to the student-speaker and live-streaming/recording customs unconstitutional in violation of the First Amendment;

B.  Issue injunctive relief to remedy those violations by ordering the customs' reinstatement unless and until Defendants substantiate a lawful reason for denying Plaintiffs access to them;

C.   Award Plaintiffs' costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1998; and

D.  Grant such additional relief as the interests of justice may require.


Date: April 23, 2024                                  Respectfully Submitted,

                                                      */s/ Golnaz Fakhimi*
                                                      Golnaz Fakhimi (GF 9791)
                                                      Reem Subei*
                                                      Naomi R. Tsu*
                                                      MUSLIM ADVOCATES
                                                      1032 15th Street NW #362
                                                      Washington, DC 20005
                                                      Tel: (202) 655-2969
                                                      golnaz@muslimadvocates.org
                                                      reem@muslimadvocates.org
                                                      naomi@muslimadvocates.org

                                                      */s/ Jonathan Wallace*
                                                      Jonathan Wallace
                                                      P.O. Box #728
                                                      Amagansett NY 11930
                                                      Tel: (917) 359-6234
                                                      jonathan.wallace80@gmail.com


                                                      *Counsel for Plaintiffs*

                                                      *(\*Application for admission pro hac vice
                                                      forthcoming)*