UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NUSAYBA HAMMAD, ERIC HOROWITZ, SAJIA
HANIF, ALE HUMANO, JESSIE DESSUS, NIA
WILSON, HENRY BURG, SHIVANI DESAI,

*Plaintiffs,*

- against -

WILLIAM C. THOMPSON, JR., SANDRA WILKIN,
MICHAEL ARAVANITES, HENRY T. BERGER, UNA
S. T-CLARKE, LORRAINE CÓRTEZ VÁZQUEZ,
BARBARALEE DIAMONSTEINSPIELVOGEL,
KEVIN D. KIM, MAYRA LINARES-GARCÍA,
ROBERT F. MUJICA, BRIAN D. OBERGFELL, JILL
O'DONNELL-TORMEY, HERMINIA PALACIO, KEN
SUNSHINE, ANGELO VIVOLO, JOHN VERZANI,
SALIMATOU DOUMBOUYA, Members of the Board
of Trustees, City University of New York,

FÉLIX MATOS RODRÍGUEZ, Chancellor, City
University of New York,

SUDHA SETTY, Dean, School of Law, City University
of New York,

*Defendants, all sued in their
official capacities, with
Defendants Thompson, Jr.,
Matos Rodríguez, and Setty
also sued in their individual
capacities.*

**24-cv-3099-JPO**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS THE AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*
28 Liberty Street
New York, New York 10005

CHRISTOPHER COULSTON
Assistant Attorney General
*Of Counsel*

## <u>TABLE OF CONTENTS</u>

**Page (s)**

TABLE OF AUTHORITIES....................................................................................................ii

PRELIMINARY STATEMENT........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ....................................................................................................................... 6

I.  Plaintiffs Lack Standing to Challenge the Decision to Move the Student Speeches to the Night Before the Commencement Ceremony ......................................................... 6

II.  The Decision to Move the Student Speakers to the Night Before Commencement Did Not Violate the First Amendment ................................................................................ 9

III. There is No Right To Broadcast a Commencement and the Decision Not to Broadcast Did Not Violate the First Amendment ..................................................................... 14

IV. There Are No Allegations Against the Defendants Thompson and Matos Rodríguez in Their Individual Capacities ..................................................................................... 16

V.  The Individual Defendants Have Qualified Immunity ............................................. 18

CONCLUSION ................................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*,
  473 U.S. 788 (1985) .......................................................................................................3

*A.M. ex rel. McKay v. Taconic Hills Cent. School Dist.*,
  510 Fed. Appx. 3 (2d Cir. 2013) ..................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................................16

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ............................................................................... 16-17

*Bardwill Indus. Inc. v. Kennedy*,
  No. 19-CV-8211, 2020 WL 2748248 (S.D.N.Y. May 27, 2020) .................................17

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) ...........................................................................................6

*Byrne v. Rutledge*,
  623 F.3d 46 (2d Cir. 2010) ..................................................................................... 10-11

*Cacchillo v. Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011) ...........................................................................................6

*Canon U.S.A., Inc. v. F & E Trading LLC*,
  No. 15-CV-6015, 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ...............................17

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
  356 F.3d 197 (2d Cir. 2004) .........................................................................................12

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) .......................................................................................................6

*Collins v. Putt*,
  979 F.3d 128 (2d Cir. 2020) .........................................................................................10

*Corder v. Lewis Palmer School Dist. No. 38*,
  566 F.3d 1219 (10th Cir. 2009) ....................................................................................11

*Crosby v. Holsinger*,
  852 F.2d 801 (4th Cir. 1988) ........................................................................................13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ..................................................................................................6

*Edwards v. Jericho Union Free School Dist.*,
    904 F. Supp. 2d 294 (E.D.N.Y. 2012) ...................................................................17

*Grant v. County of Erie*,
    542 Fed. Appx. 21, 23 (2d Cir. 2013) ......................................................................3

*Hazelwood School District v. Kuhlmeier*,
    484 U.S. 260 (1988) .......................................................................................... passim

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
    452 U.S. 640 (1981) ..................................................................................................9

*Hill v. Colorado*,
    530 US 703 (2000) ..................................................................................................12

*Hotel Emps. & Rest. Emps. Union, Local 100 & Vicinity, AFL CIO v. City of N.Y.*
    *Dep't of Parks & Recreation*, 311 F.3d 534 (2d Cir. 2002) ................................. 9-10

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
    505 U.S. 672 (1992) ..................................................................................................9

*Kass v. City of New York*,
    864 F3d 200 (2d Cir. 2017) .......................................................................................9

*Lohan v. Perez*,
    924 F. Supp. 2d 447 (E.D.N.Y. 2013) .......................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 6-8

*Malta v. Slagle*,
    2007 WL 952045 (W.D.N.Y. 2007) ......................................................................14

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ..............................................................................................9

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ......................................................................................... 7-8

*Nesbeth v. N.Y.C. Mgmt. LLC*,
    17-CV-8650, No. 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ...............................17

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) .....................................................................................18

*Peck ex rel. Peck v. Baldwinsville Cent. School Dist.*,
   426 F.3d 617 (2d Cir. 2005)...........................................................................10

*Pen Am. Ctr., Inc. v. Trump*,
   448 F. Supp. 3d 309 (S.D.N.Y. 2020)...............................................................7

*Planned Parenthood of S. Nev., Inc. v. Clark County Sch. Dist.*,
   941 F.2d 817 (9th Cir. 1991) (en banc) .........................................................13

*Potanovic v. Town of Stony Point*,
   651 F. Supp. 3d 677 (S.D.N.Y. 2023)..............................................................15

*Quirk v. DiFiore*,
   582 F. Supp. 3d 109 (S.D.N.Y. 2022) ..........................................................16-17

*Ricciuti v. New York City Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991)...........................................................................16

*Rice v. Kempker*,
   374 F.3d 675 (8th Cir. 2004) .........................................................................14

*Rivers v. Fischer*,
   390 Fed. Appx. 22 (2d Cir. 2010)...................................................................18

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)............................................................................3

*SCE Group Inc. v. City of N.Y.*,
   No. 18-CV-8909, 2020 WL 1033592 (S.D.N.Y. Mar. 3, 2020) ......................16-17

*Shomo v. City of New York*,
   579 F.3d 176 (2d Cir. 2009)...........................................................................16

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020)...........................................................................16

*Travis v. Owego–Apalachin Sch. Dist.*,
   927 F.2d 688 (2d Cir. 1991)...........................................................................10

*Turner Broadcasting Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994)......................................................................................11

*Vincent v. Yelich*,
   718 F.3d 157 (2d Cir. 2013)...........................................................................18

*Virginia State Bd. of Pharm. v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976).......................................................................................7

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ........................................................3

*Westmoreland v. Columbia Broad. Sys.*,
   752 F.2d 16 (2d Cir. 1984)..............................................................................14

*Whiteland Woods, L.P. v. Twp. of W. Whiteland*,
   193 F.3d 177 (3d Cir. 1999)............................................................................14

*Wilson v. Layne*,
   526 U.S. 603 (1999).........................................................................................18

*Ysursa v. Pocatello Educ. Ass'n*,
   555 U.S. 353 (2009).........................................................................................15

## Constitutions

U.S. Const. amend.
   I ................................................................................................ passim
   XIV ....................................................................................................9

## Federal Statutes

42 U.S.C. § 1983.....................................................................................1, 6

## Rules

Fed. R. of Civ. P.
   Rule 8 ............................................................................................. 16-18
   Rule 12 ...........................................................................................1, 18

Defendants William C. Thompson Jr., Sandra Wilkin, Michael Arvanites, Henry T. Berger, Una S. T. Clarke, Lorraine Córtez-Vázquez, Barbaralee Diamonstein-Spielvogel, Kevin D. Kim, Mayra Linares-Garcia, Robert F. Mujica, Brian D. Obergfell, Jill O'Donnell-Tormey, Herminia Palacio, Ken Sunshine, Angelo Vivolo, John Verzani (ex officio), and Salimatou Doumbouya (ex officio) (the "CUNY Board of Trustees Defendants"), along with Defendant Felix Matos Rodriguez, and Defendant Sudha Setty (together "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (ECF Doc. No. 29 ("Am. Compl.")) pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs bring two claims pursuant to 42 U.S.C. § 1983 alleging First Amendment violations based on changes that were made to the commencement ceremony at the CUNY School of Law (the "Law School"), which was held on May 23, 2024. For the 2024 commencement ceremony, the Law School moved the two student speakers to a student awards ceremony the night before the commencement. This was a return to the prior graduation practice, where elected student speakers had not traditionally spoken during the commencement. This decision was made prior to the nomination or selection of any student speakers. The Law School also did not live-stream or record the commencement in 2024, as it had done in recent years and during the COVID-19 pandemic. But these changes were plainly viewpoint neutral on their face, which defeats any First Amendment claim. Plaintiffs' claims are subject to dismissal for this and several other independent reasons, as set forth below.

*First*, Plaintiffs lack standing to bring a claim here, as none of them were injured by the decision to move the student speech to the night before commencement. None of the Plaintiffs

1

were chosen to speak at the student awards night, and there are no allegations that the student speakers – who did have the opportunity to speak to their classmates – had any particular political viewpoints. Also, several of the Plaintiffs will not even graduate until 2026 and so any future injury is speculative. *Second*, Plaintiffs fail to state a cause of action based on moving the student speeches to the night before the commencement ceremony, as such a change does not infringe on their First Amendment rights. The decision to move the speeches was clearly viewpoint neutral, as it applied regardless of the viewpoint of the speakers; indeed, the decision to move the speeches was announced in September 2023, several months *before* the speakers were selected. Moreover, the student speeches did take place, and were not restricted in any way. Given that the commencement ceremony was a school-sponsored activity, warranting the lowest level of constitutional scrutiny, Plaintiffs fail to state a First Amendment violation. *Third*, Plaintiffs fail to state a cause of action based on the decision not to live-stream or record the event, as there is no constitutional right to receive a recording of a speaker at a graduation ceremony. *Fourth*, Plaintiffs fail to make specific allegations regarding Defendants Matos Rodríguez and Thompson, as they must to state a claim against them in their individual capacities. *Finally*, Defendants Setty, Thompson and Matos Rodríguez in their individual capacities (the "Individual Defendants") are entitled to qualified immunity, because they have not violated any clearly established statutory or constitutional right of which a reasonable person would have known. For these reasons, Plaintiffs' claims are subject to dismissal.

## **FACTUAL BACKGROUND**

As alleged in the Amended Complaint, in recent years, the graduating class of the Law School has nominated student speakers to speak at the commencement ceremony. Am. Compl., ¶¶ 3, 33. On September 13, 2023, however, the Law School announced that it had decided to move

the student-elected speakers to the night before the commencement.[1]  Am. Compl., ¶¶ 76-77.[2]
Plaintiffs allege that this was announced at a faculty meeting, which was attended by a member of
the law school's student government.  *Id.*, ¶ 77.  Plaintiffs have characterized the decision as a
"denial of access to the student-speaker custom," but the "notes" published by a member of the
student government and cited by Plaintiffs indicate that the "administration" planned to hold a
"pre-commencement event for the graduating students at which a student speaker can address their
class."  *Id.*, ¶ 77.[3]  The notes also mention that Dean Setty said during the meeting that "for at least
10 years between early 2000s into 2010s there was no student speaker" at commencement, and so
the student speakers were a recent addition to the commencement ceremony.[4]

Plaintiffs have alleged that the speech was moved because of the "fallout" following the
2023 student commencement speech, which many considered anti-Semitic and controversial.  Am.
Compl., ¶¶ 51, 76-78.  The September 13 notes cited by Plaintiffs state that the graduation
ceremony in 2023 led to significant disruption on campus as Dean Setty and other staff faced
"death threats," attacks on the law school in the media, loss of donors, hate mail, "bills in state

---

[1] *See*  https://www.law.cuny.edu/newsroom_post/cuny-law-grad-week-and-commencement-2024/.  The Law School
also moved speeches by a student elected faculty and staff member to the Student Awards Night.  There are no
allegations in the Amended Complaint about the reasons for moving these speeches, which were previously part of
the commencement ceremony.  When deciding a motion to dismiss pursuant to Rule 12(b)(6), "the court is entitled to
consider facts alleged in the complaint and…documents 'integral' to the complaint and relied upon in it, and facts of
which judicial notice may properly be taken." *Grant v. County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013).  A court
may take judicial notice of government records as well as a party's website.  *See Wells Fargo Bank, N.A. v. Wrights
Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases) ("Pursuant to Rule 201, courts have
considered newspaper articles…documents filed with governmental entities and available on their official websites,
and information publicly announced on certain non-governmental websites, such as a party's official website.").
[2] Much of the Amended Complaint is focused on events taking place after September 13, 2023, and it is particularly
focused on activism at the CUNY campus related to the ongoing conflict in the Middle East, which began on October
7, 2023.  *See* Am. Compl., ¶¶ 5-6, 81-90.  But those events were obviously not relevant to the decision to move the
student speech to the night before the Commencement Ceremony, because, as Plaintiffs acknowledge, the decision
was made no later than September 13, 2023 (*Id.*, ¶ 77) and therefore preceded those events.
[3] When deciding a motion to dismiss, the Court may consider facts "contained in '[d]ocuments that are attached to the
complaint or incorporated in it by reference."  *Lohan v. Perez*, 924 F. Supp. 2d 447, 452-53 (E.D.N.Y. 2013) (quoting
*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  Notes available at https://docs.google.com/document/d/1ZEnE-
8cJviuZ4QpgCJPLf7hbP3q5Zahd/edit#bookmark=id.gjdgxs.
[4] *Id.*, p. 7.

legislature, numerous investigations, [an] ABA complaint" and "lots of FOIA requests."[5] Alarmingly, the notes also state that "some students didn't come to commencement because" of the speech, suggesting that while the student speaker was elected, her speech did not reflect the views of the entire graduating class and some felt uncomfortable attending.[6] Despite the allegations concerning the 2023 commencement speech and the subsequent reaction, Plaintiffs do not allege, nor do the notes reflect, that the decision to move the student speakers was made in order to prevent a commencement speech that was "pro-Palestinian" or that addressed the ongoing conflict in the region. Nor could it have been so intended, as the student speakers had not yet been nominated or selected at the time the decision was made.

As mentioned in the notes cited by Plaintiffs, on May 22, 2024 a "Student Awards Night" event was held for students and their families the night before the Commencement Ceremony.[7] This event included speeches by "student-nominated speakers," replicating the student speaker role at prior commencements, and there were two student speakers who spoke during the ceremony, neither of whom is a plaintiff in this action.[8] Plaintiffs have not made any allegations about restrictions on the content of the speeches during the Student Awards Night, and specifically there are no allegations that the speakers were prevented from speaking about the Israeli-Palestinian conflict or any other topic. Plaintiffs have not alleged that Defendants exercised any editorial control over either of the speeches by the student nominated speakers. Finally, Plaintiffs have not alleged that the speakers actually did speak or planned to speak about the Israeli-Palestinian conflict during the Student Awards Night, or were prevented from expressing their

---

[5] *Id.*
[6] *Id.*
[7] https://www.law.cuny.edu/students/commencement/
[8] *Id.*; https://www.law.cuny.edu/newsroom_post/cuny-law-grad-week-and-commencement-2024/

views by Defendants.  The commencement ceremony was held the following day for students and

their families.[9]

Plaintiffs have also alleged that their First Amendment rights were violated because the

Law School decided not to livestream or record the commencement ceremony.  *Id.*, ¶¶ 91-93.

Plaintiffs allege that this decision was announced on or around April 16, 2024, when a member of

the student government posted "notes" of a meeting discussing the decision.  *Id.*, ¶ 91.  The notes

indicate that recording the event would increase the costs for the Law School, because the cost of

union labor at the Apollo Theater, where the event was being held, "would be bumped from

nonprofit rate to media rate if we recorded."[10]  Plaintiffs have alleged that the ceremony was

livestreamed beginning in 2019 for "those who cannot make it" and "for loved ones and families."

*Id.*, n. 3.  Subsequent years were livestreamed during the COVID-19 pandemic.  Plaintiffs cite a

2020 Facebook post from the Law School indicating there was no in-person commencement that

year, and many family members were unlikely to be able to attend the ceremony in person as the

pandemic continued to prevent in-person attendance in subsequent years.[11]

On April 23, 2024, prior to the commencement ceremony and Student Awards Nights,

Plaintiffs filed the original Complaint.  ECF No. 1.  On July 18, 2024, Plaintiffs filed an Amended

Complaint, adding claims for nominal damages against Defendants Setty, Thompson and Matos

Rodríguez in their individual capacities.  ECF No. 29.[12]  Plaintiffs Nusayba Hammad, Eric

Horowitz, Sajia Hanif, and Ale Humano graduated or expect to graduate in December 2024 from

---

[9] https://www.law.cuny.edu/students/commencement/

[10] https://docs.google.com/document/d/1m0d_rjwHLgJxJjl2l_nGe4n9VyPm7QxyZUqcuYkbpuk/edit

[11] *See*  Am.  Compl.,  n.  3,  citing  https://www.facebook.com/photo?fbid=10157625561304833&set=a.10151553683584833

[12] Plaintiffs previously filed their Amended Complaint on July 12, 2024 (ECF No. 27), but it was rejected due to a filing error and was re-filed on July 18, 2024.

the Law School ("Graduated Plaintiffs"). Am. Compl., ¶¶ 17-20.[13]  Plaintiffs Jessie Dessus, Nia Wilson, Henry Burg, and Shivani Desai are current students at the Law School ("Student Plaintiffs"). Am. Compl., ¶¶ 22-25. Defendants now move to dismiss.

## ARGUMENT

### I.    Plaintiffs Lack Standing to Challenge the Decision to Move the Student Speeches to the Night Before the Commencement Ceremony

To establish standing, a plaintiff is required to demonstrate: (1) that he or she has "suffered an injury in fact ... which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a sufficient "causal connection between the injury and the conduct complained of"; and (3) a "likel[ihood]" that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (internal quotations and citations omitted).  The plaintiff must "demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). To seek prospective relief, such as injunctive relief or a declaratory judgment, the plaintiff is obliged to "satisfy the requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) (quoting *Lujan*, 504 U.S. at 565, n.2).

None of the Plaintiffs have alleged that they themselves were restricted from speaking at the commencement ceremony.  Instead, Plaintiffs have brought two claims based on alleged restrictions on their ability to nominate and hear from a speaker in their class. *See* Am. Compl., ¶¶ 114, 121.  While the Supreme Court has recognized a "First Amendment right to receive

---

[13] As alleged in the Amended Complaint, Plaintiff Humano participated in the May 23, 2024 commencement ceremony, but will not officially graduate until December 2024.  She, like the other Graduated Plaintiffs, seeks nominal damages. Am. Compl., ¶¶ 20-21.

information and ideas," it has identified a cognizable injury "only where the listener has a concrete, specific connection to the speaker." *Murthy v. Missouri*, 144 S. Ct. 1972, 1996 (2024) (internal quotes and citations omitted). Neither the Graduated Plaintiffs nor the Student Plaintiffs have standing to bring a First Amendment claim, because they "have not identified any specific speakers or topics that they have been unable to hear or follow." *See id.* (holding that the Supreme Court has "never accepted such a boundless theory of standing" to grant "the right to sue over someone else's censorship" merely due to a claimed "interest in that person's speech."). Plaintiffs do not allege that they were prevented from hearing the student speakers at the 2024 Student Awards Night event, nor do they allege that they have been denied the right to receive any concrete, specific, speech. To the contrary, it is simply conjecture on their part that a future, unidentified student speaker will express Plaintiffs' preferred viewpoints. While the First Amendment protects the right to receive speech, it does so only "where a speaker exists." *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 321 (S.D.N.Y. 2020) (internal quotes and citations omitted). "Freedom of speech presupposes a willing speaker." *Virginia State Bd. of Pharm. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). It is implausible to suggest that the student speakers at future commencement ceremonies would necessarily focus his or her speech on issues related to Palestinians, which is the sole basis for the alleged injury to Plaintiffs. Plaintiffs have not identified any specific speakers who were restricted from speaking about any subject, and have not alleged that the student speakers in 2024 intended to or actually did speak about the Israeli-Palestinian conflict. There is therefore no relationship between the position they advocate for here and the speakers, and there is therefore "no concrete and particularized injury." *Lujan*, 504 U.S. at 560–561.

Further, the Graduated Plaintiffs lack standing as they **did have the opportunity to listen to student speakers** as part of the Student Awards Night, which was the night before commencement at an event open to graduates, their families, and invited friends.[14]  Plaintiffs have not alleged, nor could they, how they were injured by listening to the speakers during that event instead of the commencement ceremony.  Nor have they alleged that those speakers did in fact speak about the Israeli-Palestinian conflict or intended to speak about the conflict but were prevented in some way.

The Student Plaintiffs, who were not participants in the 2024 commencement ceremony but seek injunctive relief and most of whom will not graduate until 2026 (Am. Compl., ¶¶ 22-25), lack standing as their alleged injuries are vague and speculative, and therefore not "certainly impending." *Lujan*, 504 U.S. at 565, n.2.  Plaintiffs do not allege that there has been an announcement about future commencement ceremonies, nor have they alleged that students will not be allowed to select a speaker for the commencement ceremony or the Student Awards Night. To have standing to bring their claims, they must face "a real and immediate threat of repeated injury." *Murthy*, 144 S. Ct. at 1977 (internal citations omitted).  As there are no specific allegations about future commencement ceremonies, the Student Plaintiffs have no alleged injury.  There is also no reason to think that the Student Plaintiffs will not have the same opportunity to nominate speakers for the Student Awards Nights, and therefore, again, their injuries are purely speculative. *See Lujan*, 504 U.S. at 560–561. They also cannot claim an injury with respect to the 2024 commencement ceremony, as they lack "a concrete specific connection to the speaker," as they have not alleged that they were invited to attend that ceremony, which was only open to graduating students, their families and friends.  *Murthy*, 144 S. Ct. at 1996.

---

[14]  https://www.law.cuny.edu/students/commencement/;  https://www.law.cuny.edu/newsroom_post/cuny-law-grad-week-and-commencement-2024/

For these reasons, Plaintiffs First Amendment claims are subject to dismissal.

## II.    The Decision to Move the Student Speakers to the Night Before Commencement Did Not Violate the First Amendment

Plaintiffs' First Amendment claim concerning the student commencement speech fails as a matter of law. "The First Amendment provides in relevant part that 'Congress shall make no law … abridging the freedom of speech.'" *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). "The Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States." *Id.*  The First Amendment, however, "does not guarantee the right to communicate ... at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).  "Under the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under a 'forum based approach.'" *Hotel Emps. & Rest. Emps. Union, Local 100 & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 544 (2d Cir. 2002) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992)).  "The extent to which the government may permissibly restrict such communications depends in part upon the circumstances under which those communications and the receipt of those communications occur." *Kass v. City of New York*, 864 F3d 200, 207-208 (2d Cir. 2017).

The Supreme Court has created a specific deferential standard for the regulation of student speech where "students, parents, and members of the public might reasonably perceive" the speech on a school or college campus "to bear the imprimatur of the school." *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 271 (1988).  Such "school-sponsored expressive activity" is treated as akin to taking place in a nonpublic forum, which allows for greater restrictions on speech. *Id.*

at 273.[15]    Indeed, in a nonpublic forum, "the government has maximum control over communicative behavior." *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (internal quotes and citations omitted).  "Restrictions on speech in a nonpublic forum need only be reasonable and viewpoint neutral." *Peck ex rel. Peck v. Baldwinsville Cent. School Dist.*, 426 F.3d 617, 626 (2d Cir. 2005) (internal quotes and citations omitted).  Under the *Hazelwood* standard for "school-sponsored expressive activity," educators may regulate student speech "so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273.  This is because "[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school ... rather than with the federal courts." *Id.* at 267 (quotation marks omitted).  This standard applies in the college context as well.  *Collins v. Putt*, 979 F.3d 128 (2d Cir. 2020) (applying *Hazelwood* standard to removal of blog post in college course).

In the Second Circuit, "school-sponsored speech may not be regulated in a viewpoint discriminatory manner," and so Plaintiffs must plausibly allege that the school-sponsored speech was regulated based on the viewpoint of the Plaintiffs.  *Collins*, 979 F.3d at 135.  The viewpoint-neutrality requirement ensures that—once the government has permitted speech on a given topic—it cannot "regulate speech in ways that favor some viewpoints or ideas at the expense of others."

---

[15] Plaintiffs wrongly allege that the commencement ceremony was a "limited public forum," (Am. Compl., ¶ 117).  It is not, but even under the limited public forum analysis, Plaintiffs' claims are subject to dismissal.  In a limited public forum, "the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Travis v. Owego–Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991).  "Thus, in a limited public forum, government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vic., AFL CIO v. City of New York Dept. of Parks & Recreation*, 311 F.3d 534, 545-46 (2d Cir. 2002) (internal quotes and citations omitted). "As to expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable." *Id.*, at 546.  As demonstrated below, moving the student speaker to the night before the commencement ceremony was undoubtedly "viewpoint neutral and reasonable," as it moved all student speakers to the night before commencement, and the decision was made before any speaker was selected (and thus without any knowledge of the potential viewpoint of any future speaker). *Id.*  There was therefore no "genre" of student speakers allowed at the commencement, regardless of viewpoint.  *Hotel Employees*, 311 F.3d at 545-46.

*Byrne v. Rutledge*, 623 F.3d 46, 55 (2d Cir. 2010).  In other words, a government action is neutral as to viewpoint if it is "based only upon the manner in which speakers transmit their messages ... and not upon the messages they carry[.]" *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994).

A graduation speech is a "school-sponsored expressive activit[y]" for purposes of determining whether restrictions violate the First Amendment.  *A.M. ex rel. McKay v. Taconic Hills Cent. School Dist.*, 510 Fed. Appx. 3, 7 (2d Cir. 2013); *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1229 (10th Cir. 2009) (applying *Hazelwood* to valedictory speech at graduation).  Because of this, the deferential *Hazelwood* standard applies.

Plaintiffs fail to plausibly allege that moving the student speakers to the night before commencement violated the First Amendment based on viewpoint discrimination.  The alleged harm to the Graduated Plaintiffs is they did not have the opportunity "to nominate a graduating peer" or "to hear from a graduating peer."  Am. Compl., ¶ 114.  But the Graduated Plaintiffs ***did nominate*** two students speakers who ***did speak*** the night before the commencement ceremony.[16] The nominated student speakers were provided the opportunity to speak the night before commencement, at an event open to graduates and their families, and did so, without any interference or restraint from the Law School.[17]  Defendants have not "denied access" to a student speaker as part of commencement; they simply moved the speaker to another school-sponsored event that is part of the Law School's "Commencement Week Activities."[18]  But this change places no limitation on content, and the restriction applies equally to individuals espousing their views in favor of Palestinians, Israelis, or any other subject, and is therefore viewpoint neutral.  *Turner*, 512

---

[16] *Id.*; https://www.law.cuny.edu/newsroom_post/cuny-law-grad-week-and-commencement-2024/
[17] https://www.law.cuny.edu/students/commencement/
[18] *Id.*

U.S. at 645; *Byrne*, 623 F.3d at 55.  Further, student speakers were not even part of the commencement ceremony until recently.[19]  Accordingly, it cannot form the basis of a First Amendment claim.

Even as alleged in the Amended Complaint, the decision to move the student speakers was made irrespective of the views of the nominated student speakers.  Plaintiffs have not asserted any allegations that speakers with an opposing viewpoint were permitted to speak, while those advocating for Palestinians were not.  *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) (rejecting viewpoint discrimination claim based on selective enforcement of speech where plaintiff failed to establish that other viewpoints were treated differently).  In fact, at the time the decision was made, no student had been selected to speak; no speech had been presented to the Defendants raising any particular perspective; and Defendants did not in fact restrict the student nominated speaker from speaking on any specific topic.  This alone mandates the dismissal of Plaintiffs' claim.

Plaintiffs allege that the student speakers were moved because of the 2023 commencement and resulting controversy.  Am. Compl., ¶¶ 58-75.  But a government act does not violate the First Amendment when it is "motivated by the conduct of the partisans on one side of a debate," provided the act itself is viewpoint neutral.  *Hill v. Colorado*, 530 US 703, 724 (2000).  It is also implausible that at a school as diverse as the Law School the student speaker would necessarily espouse any specific viewpoint.  *See* Am. Compl., ¶ 4.  In fact, the two speakers who were selected for the 2024 event are not plaintiffs in this lawsuit, and there are no allegations that either of them spoke about the Israeli-Palestinian conflict, or were discouraged from doing so by the

---

[19]Notes,  p.  7,  https://docs.google.com/document/d/1ZEnE-8cJviuZ4QpgCJPLf7hbP3q5Zahd/edit#bookmark=id.gjdgxs.

Defendants.[20]  Plaintiffs even allege that their interest in a student speaker ***did not*** depend on the viewpoint expressed, alleging that their injury occurs "no matter which student may speak or what viewpoints they express." *Id.*, ¶ 99.  Plaintiffs thus admit that the claims are brought irrespective of the viewpoint of the student speakers, and thus fail to allege a violation of the First Amendment.

Finally, even accepting Plaintiffs' allegation that the change was made to avoid any controversy, the Law School has the authority to regulate speech to avoid controversy and disruption.  "The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose*." Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 811 (1985).  Under *Hazelwood*, educators may regulate student speech "so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273.  Even if the decision was made to avoid controversy, there is a valid pedagogical reason to do so.  *See Planned Parenthood of S. Nev., Inc. v. Clark County Sch. Dist.*, 941 F.2d 817, 828 (9th Cir. 1991) (en banc) (upholding the school's purpose in avoiding controversial topics in advertisements contained in programs distributed at athletic events); *Crosby v. Holsinger*, 852 F.2d 801, 802 (4th Cir. 1988) (finding school had a valid pedagogical concern in avoiding a school mascot that was controversial to a segment of the school population).  As the Supreme Court held in *Hazelwood*, school officials must be permitted to "retain the authority to refuse ... to associate the school with any position other than neutrality on matters of political controversy." *Hazelwood*, 484 U.S. at  272.

Put simply, even setting aside the fact that no student speaker had been selected when the decision to move the speech was made and that there are no allegations that the speakers spoke or intended to speak about any Palestinian issue, Defendants were entitled to make the viewpoint

---

[20] https://www.law.cuny.edu/newsroom_post/cuny-law-grad-week-and-commencement-2024/

neutral decision to move the student speeches. Therefore, Plaintiffs' First Amendment claim concerning the student speakers should be dismissed.

### III.    There is No Right To Broadcast a Commencement and the Decision Not to Broadcast Did Not Violate the First Amendment

Plaintiff's challenge to the decision not to broadcast commencement fails as a matter of law.  A state subdivision such as CUNY need not "accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record." *Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999) (upholding ban on videotaping planning commission meetings).  Indeed, there are a significant number of cases which hold that there is **no** constitutional right to have public proceedings videotaped. *Malta v. Slagle*, 2007 WL 952045, 4-5 (W.D.N.Y. 2007) (collecting cases holding that there is no constitutional right to a recording where the public is granted alternative means of compiling a comprehensive record); *Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir. 2004) ("[C]ourts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access.") (collecting cases).  Although Plaintiffs may have wanted to access the commencement ceremony through a livestream, the First Amendment does not require Defendants to provide such access. *See Westmoreland v. Columbia Broad. Sys.*, 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap ... between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised.").

Here, there were no restrictions on students (or other attendees) taking notes of what happened during the commencement and Student Awards Night or recording portions through their phones or some other means and disseminating those recordings.  The Graduated Plaintiffs were permitted to attend the Student Awards Night and hear the student speakers, but there is no right

14

to compel Defendants to record and propagate such speech.  *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (holding that state governments cannot be "enlist[ed]" to propagate private speech).  There was therefore no constitutional requirement to broadcast a graduation ceremony that was primarily of interest to the attendees, namely the students and their families.

It is also appropriate to change a practice regarding live-streaming or recording of public events once in effect.  In *Potanovic¸* a town omitted public input sessions from town hall meetings from its Facebook Live and archived video recordings after previously broadcasting them. *Potanovic v. Town of Stony Point*, 651 F. Supp. 3d 677, 681 (S.D.N.Y. 2023), *affd*, 23-204-CV, 2024 WL 3159221 (2d Cir. June 25, 2024).  The court found that the change was permissible because "[a]lthough plaintiff may have wanted to access certain public input sessions through the Town's Facebook Live broadcast or archived footage, the First Amendment does not require the Town to provide such access."  *Id.* at 683.

As there is no right to a recording or live-stream of speech, Plaintiff's second cause of action is subject to dismissal.

Further, the decision not to broadcast the student speeches was viewpoint neutral, and therefore permissible under *Hazelwood. See supra* Sec. II.  Indeed, the documents cited by Plaintiffs demonstrate that the decision was made due to cost sensitivities, and was wholly unrelated to any anticipated speech about any particular viewpoint.[21]  Therefore, Plaintiffs' claim related to the recording of the commencement should be dismissed.

---

[21] *See* "notes" cited by Plaintiffs at https://docs.google.com/document/d/1m0d_rjwHLgJxJjl2l_nGe4n9VyPm7 QxyZUqcuYkbpuk/edit

**IV.    There Are No Allegations Against the Defendants Thompson and Matos Rodríguez in Their Individual Capacities**

Plaintiffs have brought claims against William C. Thompson, Jr., the Chairman of the CUNY Board of Trustees, and Felix Matos Rodríguez, the Chancellor of CUNY, in their individual capacities pursuant to 42 U.S.C. § 1983. Those claims fail as a matter of law because they fail to plead personal involvement, and their group pleading violates Rule 8.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009). Pleading supervisory liability is insufficient. *Quirk v. DiFiore*, 582 F. Supp. 3d 109, 114 (S.D.N.Y. 2022). "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Similarly, Plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure. "Rule 8(a) of the Federal Rules of Civil Procedure 'requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *SCE Group Inc. v. City of N.Y.*, No. 18-CV-8909, 2020 WL 1033592, at *3 (S.D.N.Y. Mar. 3, 2020) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). This rule "is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). "Accordingly, where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Bardwill Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) (citations omitted). As a result, "[p]leadings fail to meet that minimum

16

requirement [of Rule 8(a)] where allegations 'lump all the defendants together in each claim and provide no factual basis to distinguish their conduct.'" *SCE Group Inc*., 2020 WL 1033592, at *3 (quoting *Atuahene*, 10 F. App'x at 34); *see also Nesbeth v. N.Y.C. Mgmt. LLC*, 17-CV-8650, No. 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) ("'[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes,' and that 'Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.'") (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, *7 (E.D.N.Y. Sept. 29, 2017)).

Plaintiffs do not come close to satisfying these standards. The Amended Complaint does not assert a single factual allegation concerning any unlawful action taken by Chancellor Matos Rodríguez or Chairman Thompson that is not general, conclusory, or irrelevant and wholly unrelated to the commencement decisions at issue here. Instead, Plaintiffs seemingly name both the Chancellor and the Chairman solely based on their senior roles at CUNY. That is insufficient to state a claim. *See, e.g., Edwards v. Jericho Union Free School Dist.*, 904 F. Supp. 2d 294, 308 (E.D.N.Y. 2012) (no finding of personal liability simply because defendant held a position of authority). The primary allegation against both individuals is that Defendant Setty is "subject to the authority of both the CUNY Chancellor and the CUNY Board of Trustees." Am. Compl., ¶ 32. But alleging supervisory liability is insufficient, and Plaintiffs must allege specific acts by the Chancellor and the Chairman that violated the Constitution. *Quirk*, 582 F. Supp. 3d at 114. The remaining allegations are general and improper under Rule 8 of the Federal Rules of Civil Procedure (*see* "Defendants have routinely permitted" Am. Compl., ¶ 33; "Defendants have routinely enabled," *Id.*, ¶ 34; "Defendants have routinely live-streamed," *Id.*, ¶ 36; "Defendants

are denying access" *Id.*., ¶¶ 37, 38).  Since Plaintiffs fail to make any specific allegations, the claims against the Chancellor and the Chairman in their individual capacities should be dismissed.

## V.    The Individual Defendants Have Qualified Immunity

"A government official is entitled to qualified immunity for his actions unless his conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Rivers v. Fischer*, 390 Fed. Appx. 22, 23 (2d Cir. 2010).  Moreover, it is "well established that an affirmative defense of official immunity should be resolved as early as possible by the court…and may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). Specifically, "[w]here the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6)." *Vincent v. Yelich*, 718 F.3d 157, 167 (2d Cir. 2013).  Qualified immunity applies unless the unlawfulness of the act in question is apparent "in the light of pre-existing law." *Wilson v Layne*, 526 U.S. 603, 604 (1999).

It is evident that there is no constitutional right, much less a clearly established constitutional right, to compel a school to allow student speakers at a commencement ceremony or to require the school to live-stream or record such a ceremony.  To the contrary, the weight of authority demonstrates that colleges and universities have substantial discretion over school-sponsored activities such as a commencement ceremony, and a finding to the contrary would be a dramatic departure from settled First Amendment precedent which gives schools substantial leeway over school-sponsored activities (*see* Sec. II, *infra*).  Defendants are not aware of any case requiring a college to allow student speakers at a commencement ceremony or mandating the

recording of such a ceremony.  Thus, the Individual Defendants are entitled to qualified immunity with respect to the claims in the Amended Complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court dismiss the Amended Complaint in its entirety, with prejudice, and grant such other and further relief as it deems to be just and proper.

Dated: New York, New York
       September 13, 2024

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for Defendants*

By: <u>/s/ *Christopher Coulston*</u>
    Christopher Coulston
    Assistant Attorney General
    28 Liberty Street
    New York, New York 10005
    (212) 416-8556
    Christopher.Coulston@ag.ny.gov

19