## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NUSAYBA HAMMAD, ERIC HOROWITZ,
SAJIA HANIF, ALE HUMANO, JESSIE
DESSUS, NIA WILSON, HENRY BURG,
SHIVANI DESAI,

       *Plaintiffs,*

       v.

WILLIAM C. THOMPSON, JR., SANDRA
WILKIN, MICHAEL ARAVANITES,
HENRY T. BERGER, UNA S. T-CLARKE,
LORRAINE CÓRTEZ VÁZQUEZ,
BARBARALEE DIAMONSTEIN-
SPIELVOGEL, KEVIN D. KIM, MAYRA
LINARES-GARCÍA, ROBERT F. MUJICA,
BRIAN D. OBERGFELL, JILL
O'DONNELL-TORMEY, HERMINIA
PALACIO, KEN SUNSHINE, ANGELO
VIVOLO, JOHN VERZANI, SALIMATOU
DOUMBOUYA,
Members of the Board of Trustees, City
University of New York,

FÉLIX MATOS RODRÍGUEZ,
Chancellor, City University of New York,

SUDHA SETTY,
Dean, School of Law, City University of New
York,

       *Defendants, all sued in their
       official capacities, with
       Defendant Setty also sued in
       her individual capacity.*

Civil Action No. 1:24-cv-03099-JPO

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

## INTRODUCTION

1.  Plaintiffs are a diverse group of law students and alumni who bring this First Amendment complaint to challenge Defendants' denial of access to the customs of enabling graduating students to hear a peer speak at their commencement ceremony, select that peer through a nomination process, and have a graduation ceremony that Defendants live-stream or record and post online.

2.  Plaintiffs have chosen legal education as a pathway to doing advocacy that can advance social justice. Their law school, the City University of New York School of Law ("CUNY Law" or "the law school"), was founded over forty years ago with that goal in mind. It is ranked the number one public-interest law school in the country and is the most diverse law school in the nation. Its diversity is in keeping with that of its twenty-four sibling campuses under the umbrella of the City University of New York ("CUNY"), the largest urban public university in the United States.

3.  Like for so many students who pursue higher education, for these Plaintiffs, graduation constitutes the singular culmination of a shared educational experience marked by deep personal and interpersonal investment and sacrifice. As a matter of custom, graduating students of CUNY Law have typically been able to be represented by a graduating peer at commencement, have gotten to select that peer through a nomination process, and have gotten to have the law school live-stream or record and post the event. The student speakers typically have used their platform at commencement to express personal perspectives on what the law school's motto of "law in the service of human needs" means to them—including and especially in reference to the most pressing human needs of the time.

1

4. In the view of Plaintiffs and many other students and alumni of CUNY Law, the human needs of the Palestinian people—who are facing famine, displacement, and overwhelming state violence that many observers recognize as amounting to genocide—are among the most pressing human needs imaginable.

5. In recent months, ongoing Israeli military violence has been devastating Palestinians—to date killing at least 42,000 people in the Gaza Strip ("Gaza"), including over 16,900 children, and wounding nearly 100,000 people in Gaza, including, as estimated in July 2024, over 34,000 children. Israeli bombardments have caused sheltering civilians in Gaza to die or burn alive in inescapable infernos. At least 25,973 children in Gaza are living without one or both parents or have otherwise gone missing, left for dead beneath rubble. Experts estimate that even if Israel's military violence in Gaza were to stop today, over 186,000 further deaths of Palestinians would result from its persistent effects—including destroyed health-care infrastructure, severe water and food shortages, and the impossibility of escape to safety—in subsequent months and years.

6. In addition to direct threats to health and safety, the devastation against Palestinians in Gaza includes what rights experts refer to as "scholasticide," meaning the systematic destruction of the Palestinian education system. As of September 2, 2024, the Israeli military has killed more than 10,490 school and university students and at least 500 school and university teachers in Gaza and injured over 16,700 school and university students there. The Israeli military has also destroyed over 80 percent of the buildings housing institutions of higher education in Gaza, and at least 625,000 school-aged children in Gaza have had no access to education for the past year.

7. Plaintiffs and other CUNY Law students and alumni are not alone in their perspective that the catastrophic state violence against Palestinians is among the most pressing issues of our time. Their predecessors shared that view, electing student speakers for commencement in May 2023

and May 2022 who used the student-speaker platform at commencement to express support for Palestinian lives and freedom.

8.   The remarks of those student commencement speakers led to widespread and intense public attention and debate. The debate centered around viewpoints that support Palestinian lives and freedom or that otherwise criticize the Israeli state, its policies and practices, or the political ideology of Zionism.[1] Within that debate, many people, including Plaintiffs, understand such criticisms to sound in anti-racist values and an abiding belief in the collective and shared nature of freedom and wellbeing for all people.

9.   In the aftermath of the speeches of the law school's 2022 and 2023 student speakers for commencement, people opposed to the speeches' content demanded, among other things, the resignation of Defendants or the termination or revocation of their involvement in the CUNY system. Some of those public outcries offered an exit ramp of capitulation to assorted other demands, including the termination of the student-speaker custom at the law school's commencement ceremonies.

---

[1] According to Jewish Voice for Peace ("JVP"), a Jewish, grassroots membership organization, Zionism is commonly understood to refer to "a 19th century political ideology that claimed Jewish safety required a Jewish-only nation-state." JVP understands the related concept of anti-Zionism to be "a loose term referring to criticism of the current policies of the Israeli state, and/or moral, ethical, or religious criticism of the idea of a Jewish nation-state." According to JVP, there "has been debate, criticism and opposition to Zionism within Jewish thought for as long as it has existed. Jewish anti-Zionists span a political and religious spectrum, from religious and secular progressives who view opposition to Zionism as an anti-racist praxis, to ultra-Orthodox Jews who oppose Jewish dominion until the time of the Messiah, to anarchist Jews who oppose the very concept of nation-states, Jewish or otherwise. There are also many non-Jewish anti-Zionists whose perspectives may be informed by moral criticism of the policies of the Israeli government, problems with the impact of Zionist thinking in Israel on non-Jewish residents, and/or a criticism of ethno-nationalism more broadly. Many Palestinians take anti-Zionist positions or identify as anti-Zionist because of the current and historical practices of the Israeli state. Criticism of Zionism is not to be conflated with antisemitism."

10. In other words, some of Defendants' critics expressed willingness to be mollified by steps short of Defendants' termination, such as de-platforming CUNY Law student commencement speakers.

11. Defendant Setty, in concert with or under the influence of the other Defendants, did deny Plaintiffs and their peers access to the student-speaker and live-streaming/recording customs for the law school's commencement ceremonies. In turn, Plaintiffs and their peers spent the 2023–24 academic year urging the reinstatement of these customs and have otherwise confronted repression on campus in order to undertake ongoing speech and expressive conduct in support of Palestinian lives and freedom. Defendants have not demonstrated to them any willingness to reverse the decisions to deny them access to the student-speaker and live-streaming/recording customs.

12.  Plaintiffs' experiences are not unique. As the movement for Palestinian lives and freedom has grown in the United States, so, too, have efforts to suppress it. From 2014–20, Palestine Legal, a nonprofit organization that provides advice and representation to people who face repression due to their advocacy for Palestinian rights, responded to 1,707 incidents targeting speech for Palestinian rights, observing across them a variety of repressive practices in colleges and universities, including censorship, restrictions on academic freedom, discriminatory imposition of bureaucratic barriers to speech and association, and discriminatory application of administrative sanctions on speech and association.

13. The First Amendment roundly protects freedom of speech within public institutions like CUNY, irrespective of viewpoint, and subject only to very narrow limitations. Its protections are especially critical in a setting like the law school, which is supposed to prepare students and alumni like Plaintiffs to engage critically with opposing and often charged viewpoints that abound in legal advocacy. Instead of affording Plaintiffs access to the same customs their predecessors enjoyed of

4

getting to nominate a peer to speak at graduation, getting to hear a peer speak at graduation, and having Defendants live-stream or record and publicly archive footage of the graduation ceremony, the celebratory culmination of their training and education—Defendants have precluded that access based on viewpoint discrimination and retaliation in violation of the First Amendment.

14. Plaintiffs respectfully urge the Court to intervene and remedy the resultant repression they are challenging.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under the First and Fourteenth Amendments of the U.S. Constitution; 28 U.S.C. §§ 1331, 1343, 2201, 2202; and 42 U.S.C. §§ 1983, 1988.

16. Venue lies in this district under 28 U.S.C. § 1391(b).

## PARTIES

***Plaintiffs who recently graduated and are seeking nominal damages against Defendant Setty in her individual capacity***

17. Plaintiff Nusayba Hammad graduated from the law school on June 6, 2024, after completing the 2023–24 academic year in its full-time program. Nusayba's ethnicity is Palestinian.

18. Plaintiff Eric Horowitz graduated from the law school on June 6, 2024, after completing the 2023–24 academic year in its full-time program. Eric is Jewish.

19. Plaintiff Sajia Hanif graduated from the law school on June 6, 2024, after completing the 2023–24 academic year in its full-time program. Sajia is Muslim and Afghan.

20. Plaintiff Ale Humano is a student of the law school in the final year of its part-time program, is due to graduate in December 2024, and participated in the law school's May 23, 2024, commencement ceremony. Ale's ethnicity is Latinx.

21. Plaintiffs Hammad, Horowitz, Hanif, and Humano are seeking nominal damages against Defendant Setty in her individual capacity.

***Plaintiffs slated to graduate within 1–2 years and who are seeking declaratory and injunctive relief against all Defendants in their official capacities***

22. Plaintiff Jessie Dessus is a student of the law school in its part-time program and due to graduate in 2026. Jessie is a first-generation Puerto-Rican American.

23. Plaintiff Nia Wilson is a student of the law school in its full-time program and due to graduate in December 2024. Nia's ethnicity is East Asian.

24. Plaintiff Henry Burg is a student of the full-time program of the law school and due to graduate in 2026. Henry is Jewish.

25. Plaintiff Shivani Desai is a student of the full-time program of the law school and due to graduate in 2026. Shivani's ethnicity is South Asian.

26. Plaintiffs Dessus, Wilson, Burg, and Desai are seeking declaratory and injunctive relief against all Defendants in their official capacities.

***Defendants***

27. Defendant William C. Thompson, Jr., is the Chairperson of the CUNY Board of Trustees and is sued in his official capacity. In his role as Chairperson, Defendant Thompson is a member *ex officio* of all of its committees; is entitled to vote at all of its meetings and the meetings of all of its committees; names and designates the chairpersons of all standing and special committees of the board; is empowered to execute all documents, receipts, releases, or other instruments requiring the signature of an authorized representative of the board; is the spokesperson through whom the board announces and publicizes board actions or decisions primarily within the board's statutory fields of governance and policy-making; within those fields  has the principal

6

responsibility for board communications and board dealings; and answers communications addressed to the board or to himself in his official capacity. *See* CUNY Bylaws, Article II.

28. Defendant Sandra Wilkin is the Vice Chairperson of the CUNY Board of Trustees and is sued in her official capacity.

29. Each of the following Defendants is a Trustee of the CUNY Board of Trustees and is sued in his/her official capacity: Michael Arvanites, Henry T. Berger, Una S. T-Clarke, Lorraine Córtez-Vázquez, Barbaralee Diamonstein-Spielvogel, Kevin D. Kim, Mayra Linares-Garcia, Robert F. Mujica, Brian D. Obergfell, Jill O'Donnell-Tormey, Herminia Palacio, Ken Sunshine, Angelo Vivolo, John Verzani (*ex officio*), and Salimatou Doumbouya (*ex officio*).

30. The CUNY Board of Trustees is responsible for governing and administering CUNY, has sole control of CUNY's educational work, and governs and administers all educational units of CUNY. N.Y. Educ. Law § 6204(1).

31. Defendant Félix Matos Rodríguez is the Chancellor of CUNY and is sued in his official capacity. As Chancellor, Defendant Matos is the chief executive, educational, and administrative officer of CUNY; the chief educational and administrative officer of the law school and all other senior and community colleges and other educational units and divisions for which the CUNY Board acts as Trustees; and is subject to the authority of the Board of Trustees. *See* CUNY Bylaws, Article XI § 11.2. Among his duties is the requirement of "[p]resent[ing] to the board all important reports, recommendations, and plans submitted by a college president [or dean], faculty or governance body with his/her recommendations, if any." *Id*.

32. Defendant Sudha Setty is the Dean of CUNY Law School and is sued in both her official and individual capacities. As Dean, Defendant Setty serves as the executive officer for the law school and is responsible for conserving and enhancing its educational program and providing

leadership to the law school community for the purpose of achieving those ends. In her role at the law school, Defendant Setty is subject to the authority of both the CUNY Chancellor and the CUNY Board of Trustees. *See* CUNY [Bylaws](#), Articles XI, XVII. Specifically, her role as Dean requires that she "[b]e an advisor and executive agent of the chancellor and have the immediate supervision with full discretionary power to carry into effect the bylaws, resolutions, and policies of the board, the lawful resolutions of any board committees, and policies, programs, and lawful resolutions of the several faculties and students where appropriate." *See* CUNY [Bylaws](#), Article XI § 11.4(c). Her role also requires that she "[a]ttend meetings of the board and advise the chancellor and the board on all matters related to educational policy and practice," *id*. at § 11.4(f); that she "[c]onsult with and make recommendations to the chancellor concerning all matters of significant academic, administrative or budgetary consequence affecting the college and/or the university," *id*. at § 11.4(j); and that she "[p]resent to the chancellor communications from faculties, officers, employees, or students together with any advice or recommendations of his/her own concerning the subject of such recommendations or communications," *id*. at § 11.4(k). Essentially, as the law school dean, Defendant Setty is its chief educational and administrative officer, consults with and reports to the CUNY Chancellor, and advises CUNY's Chancellor and Board of Trustees on matters concerning the law school. *See* City University of New York School of Law [Governance Plan](#) at 2–3.

## FACTUAL ALLEGATIONS

### *Customary Student-Speakers at CUNY Commencement Ceremonies*

33. As a matter of custom, practice, and/or policy, Defendants have routinely permitted the graduating classes of many CUNY campuses, including the law school, to have a graduating classmate speak at their respective commencement ceremonies—thereby creating a public forum

for the student speakers and the recipients and observers of their remarks at commencement ceremonies. Defendants have not customarily imposed viewpoint-based restrictions on the use of or access to the student-speaker platform available at CUNY commencement ceremonies—including with respect to the law school, until the 2023–24 academic year.

34. As a matter of custom, practice, and/or policy, Defendants have routinely enabled the graduating classes of some CUNY campuses—including the law school, the Craig Newmark Graduate School of Journalism ("the journalism school"), and the CUNY School of Professional Studies ("the professional-studies school")—to select a graduating classmate to speak at their respective commencement ceremonies,[2] thereby creating a public forum in the form of the

---

[2] *See, e.g.*, CUNY School of Law, *#1 Public Interest Law School Delivers the Next Generation of Social Justice Advocates to the Legal Profession*, May 13, 2021 (referencing 2021 student-selected speakers); CUNY School of Law, Facebook post, May 15, 2020 (referencing 2020 student-selected speaker); CUNY School of Law, Twitter post, May 17, 2019 (referencing 2019 student speaker); LinkedIn, Aneesa Osborne (referencing the "2019 Elected Class Speaker" at CUNY Law); CUNY School of Law, Facebook post, May 11, 2018 (referencing 2018 student speaker); Internet Archive Wayback Machine, CUNY School of Law, *CUNY Law Celebrates the Class of 2017*, May 18, 2017 (referencing 2017 student-selected speaker); Internet Archive Wayback Machine, CUNY School of Law, *CUNY Law Celebrates the Class of 2016*, May 11, 2016 (referencing 2016 student-selected speaker); *see also, e.g.*, CUNY School of Professional Studies, *CUNY SPS Commencement Ceremony Livestream Recording – May 25, 2023*, YouTube, June 2, 2023 (introduction of 2023 student-selected speaker at 00:38:00); CUNY School of Professional Studies, *2022 CUNY SPS Commencement Ceremony*, YouTube, June 14, 2022 (introduction of 2022 student-selected speaker at 00:47:05 within commencement ceremony celebrating graduating classes of 2022, 2021, and 2020); CUNY School of Professional Studies, *CUNY SPS Pays Tribute to Courageous and Dedicated Class of 2021*, May 27, 2021 (referencing "LaSheemma Norman, who was selected by members of the CUNY SPS Student Association to be the 2021 student speaker"); CUNY School of Professional Studies, *Windy Nicely – Student Speaker – CUNY SPS Commencement 2019*, YouTube, June 7, 2019 (speech of 2019 student speaker); CUNY School of Professional Studies, *Christopher Bonet – CUNY SPS Student Speaker Commencement 2018*, YouTube, June 12, 2018 (speech of 2018 student speaker); CUNY School of Professional Studies, *Daniel Chan – CUNY SPS Commencement 2017*, YouTube, Sep. 13, 2017 (speech of 2017 student speaker, referencing having been selected by his peers at 00:00:00–0:00:19); CUNY School of Professional Studies, *CUNY SPS Commencement 2016 Student Speaker: Matthew Conlin*, YouTube, July 18, 2016 (speech of 2016 student speaker, remarking to his peers at 00:00:00 – 00:00:06, "Thank you for granting me the honor to speak today"); *see also, e.g.*, CUNY Craig Newmark Graduate School of Journalism, *Commencement 2023* (announcing student-selected speaker for 2023 commencement); CUNY Craig Newmark Graduate School of Journalism, *Rachel Maddow to Deliver 2023 Newmark J-School Commencement Address*, Sep. 5, 2023 ("The student speaker, chosen by the Class of 2023, and alumni speaker will be announced in October."); CUNY Craig Newmark Graduate School of Journalism, *Commencement 2022: Student Speaker Molly Boigon*, YouTube, Dec. 20, 2022 (speech of 2022 student speaker); CUNY Craig Newmark Graduate School of Journalism, *Fall 2021 Commencement: Student Speaker Angela Palumbo*, YouTube, Dec. 17, 2021 (speech of 2021 student speaker, thanking her peers at 00:00:30–00:00:50 for selecting her to speak on their behalf); CUNY Craig Newmark Graduate School of Journalism, *Fall 2020 Commencement Ceremony*, YouTube, Dec. 18, 2020 (remarks of 2020 student speaker begin at 00:23:00); CUNY Craig Newmark Graduate School of Journalism, *Alumni Newsletter,*

selection process. Defendants have not customarily imposed viewpoint-based restrictions on use of or access to the selection platforms available to students for selecting a graduating peer to speak at a CUNY commencement ceremony—including with respect to the law school, until the 2023–24 academic year.

35. At the law school, until the 2023–24 academic year, this custom, practice, and/or policy had extended to the graduating classes of both the full-time and part-time programs, enabling each to select a student speaker for commencement.

*Customary Live-Streaming and/or Recording and Posting of CUNY Commencement Ceremonies*

36. As a matter of custom, practice, and/or policy, Defendants have routinely live-streamed through CUNY media and/or recorded and posted online for public consumption via CUNY media the commencement ceremonies of many CUNY campuses, thereby creating a public forum for attendees and observers of commencement ceremonies. Defendants have not customarily imposed viewpoint-based restrictions on use of or access to this custom, practice, and/or policy—including with respect to the law school, until the 2023–24 academic year.[3]

---

*October 2020*, Oct. 7, 2020 ("Noelle Lilley '20 has been chosen by her 2020 classmates as the student speaker."); CUNY Craig Newmark Graduate School of Journalism, *Fall 2019 Commencement: Student Speaker Natalia Rodríguez Medina*, YouTube, Dec. 13, 2019 (remarks of 2019 student speaker, thanking her peers at 00:01:20–00:01:40 for selecting her to speak on their behalf); Natalia Rodríguez Medina, Website, *About Me* ("I graduated from Newmark J in December of 2019, and was chosen by my fellow classmates to be the student speaker at commencement."); CUNY Craig Newmark Graduate School of Journalism, *Fall 2018 Commencement: Student Speaker K. Dominic McKenzie*, YouTube, Dec. 14, 2018 (remarks of 2018 student speaker); CUNY Craig Newmark Graduate School of Journalism, *Fall 2017 Commencement: Student Speaker Joy Notoma*, YouTube, Dec. 15, 2017 (remarks of 2017 student speaker); CUNY Craig Newmark Graduate School of Journalism, *Alumni Newsletter, Winter 2018*, Feb. 16, 2018 ("Joy Notoma, '17, chosen by her class to be last year's commencement speaker, is the winner of the Newsweek Alumni Prize."); CUNY Craig Newmark Graduate School of Journalism, Fall 2016 Commencement: Student Speaker Gustavo Martinez, YouTube, Dec. 20, 2016 (remarks of 2016 student speaker stating at 00:04:47–00:05:05, "Just when the country elected Donald Trump as president, a job he landed after calling my people 'rapists and criminals,' you, the class of 2016, elected a Mexican boy from the desert, directo de la frontera, as your student commencement speaker"); CUNY Craig Newmark Graduate School of Journalism, *Alumni Newsletter, October 2020*, Oct. 7, 2020 ("Gustavo Martinez Contreras '16 . . . was elected by his classmates to be their commencement speaker.").

[3] *See, e.g.*, CUNY School of Law, Event Calendar, *Commencement 2023*, May 12, 2023 (includes link entitled "Watch Livestream," although the content is no longer accessible); CUNY School of Law, Event Calendar, *CUNY*

*Changes as of the 2023–24 Academic Year for CUNY Law School's Commencements*

37. As of the 2023–24 academic year, Defendants have been denying access to the custom, practice, and/or policy of live-streaming and/or recording and posting online for public consumption via CUNY media the commencement ceremonies of students graduating from the full-time and part-time programs of the law school. In concert with or under the influence of the other Defendants, Defendant Setty denied access to this custom to students who participated in the law school's May 23, 2024, commencement ceremony, including Plaintiffs Hammad, Horowitz, Hanif, and Humano.

38. As of the 2023–24 academic year, Defendants have been denying access to, for the full-time and part-time programs of the law school, the custom, practice, and/or policy of routinely permitting their graduating classes to select a graduating classmate to speak at commencement. In concert with or under the influence of the other Defendants, Defendant Setty denied access to this custom to students who participated in the law school's May 23, 2024, commencement ceremony, including Plaintiffs Hammad, Horowitz, Hanif, and Humano.

39. As of the 2023–24 academic year, Defendants have not been allowing any student speakers at the law school's commencement ceremonies, not even speakers selected or designated by the law school's faculty or administration. They did not permit any sanctioned student speakers at the law school's May 23, 2024, commencement ceremony.

---

*School of Law 37th Commencement*, May 13, 2022 ("The ceremonies will be livestreamed for loved ones and families."); CUNY School of Law, Event Calendar, *CUNY School of Law 36th Commencement*, May 14, 2021 (bottom of page referencing livestream link); CUNY School of Law, Facebook post, May 9, 2020 (referencing live-streaming of May 15, 2020, YouTube event to honor graduating students); CUNY School of Law, Facebook post, May 17, 2019 ("A reminder for those who cannot make it — we'll be live-streaming Class of 2019's Commencement here.").

40. The custom, practice, and/or policy of permitting the graduating classes of the journalism school and of the professional-studies school to select a graduating classmate to speak at commencement remain in place.[4]

41. The custom, practice, and/or policy of other CUNY campuses to have a student speaker at commencement remain in place.[5]

42. The custom, practice, and/or policy of other CUNY campuses to live-stream their commencement ceremonies and/or record and post them online for public consumption via a CUNY website and/or social-media account remain in place.[6]

***Anti-Palestinian Repression Driving Changes to CUNY Law's Commencements***

43. The repression of Palestine solidarity speech is often fueled by anti-Palestinian racism that drives deliberate conflation of vocal support for the lives and freedom of Palestinians and criticisms of Israeli state practices with anti-Jewish hatred. Such conflation delegitimizes and provides justification for the repression of principled speech on urgent political and moral questions related to Palestine.

44. As detailed below, repression of speech related to Palestine, which amounts to a Palestine exception to free-speech protections, has driven the changes as of the 2023–24 academic year to

---

[4] *See, e.g.*, CUNY School of Professional Studies, *2024 CUNY SPS Commencement Ceremony – Full Event*, YouTube, May 30, 2024 (introduction of 2024 student-selected speaker at 00:42:00); CUNY Craig Newmark Graduate School of Journalism, *Commencement 2023* (announcing student-selected speaker for 2023 commencement); CUNY Craig Newmark Graduate School of Journalism, *Rachel Maddow to Deliver 2023 Newmark J-School Commencement Address*, Sep. 5, 2023 ("The student speaker, chosen by the Class of 2023, and alumni speaker will be announced in October."); CUNY School of Professional Studies, *CUNY SPS Commencement Ceremony Livestream Recording – May 25, 2023*, YouTube, June 2, 2023 (introduction of 2023 student-selected speaker at 00:38:00).

[5] *See, e.g.*, CUNY School of Labor and Urban Studies, *SLU Commencement Ceremony 2024*, May 29, 2024 (introduction of student speaker and valedictorian at 00:46:14).

[6] *See, e.g*., n. 4, *supra* (linking to publicly available recording of May 2024 commencement posted by the professional-studies school); CUNY School of Medicine, *CUNY Med MD Class of 2024 Commencement Ceremony*, YouTube, May 23, 2024 (publicly available recording of 2024 commencement ceremony posted by CUNY School of Medicine).

the law school's commencement and resulted from a steady and escalating campaign against viewpoints of members of the law school community who support the lives and freedom of Palestinian people, including and especially the student speakers at the law school's May 2022 and May 2023 commencement ceremonies.

*Campus Support of Palestinians and Related Backlash in the Lead-up to the May 2022 Commencement Ceremony*

45. On December 2, 2021, two student groups on the law school campus, Students for Justice in Palestine and the Jewish Law Students Association, sponsored a resolution backing the global campaign for boycott, divestment, and sanctions ("BDS") against the state of Israel. The resolution articulates BDS to be a form of resistance against apartheid and oppression to which the state of Israel subjects the Palestinian people. Twenty other CUNY Law student groups endorsed it.

46. On December 10, 2021, Defendant Matos publicly disavowed the BDS resolution, stating that it does "not represent the views of CUNY."

47. On December 14, 2021, a public letter helmed by Inna Vernikov, a self-identified Zionist and member of the New York City Council, thanked Defendant Matos for his disavowal of the BDS resolution, calling the resolution "treacherous" and claiming it to be discriminatory against Jewish people—eliding the resolution's co-sponsorship by the Jewish Law Students Association.

48. On May 12, 2022, the day before commencement, many faculty of the law school expressed their support of the students' BDS resolution.

*Pro-Palestinian May 2022 Student Commencement Speech and Resulting Public Reactions*

49. At the May 13, 2022, commencement ceremony of the law school, the speech of the student speaker included criticism of the state of Israel and support for the lives and freedom of the Palestinian people, uplifting the BDS resolution supported by both students and faculty of the law

school.  Selected by her graduating classmates, the speaker was ethnically Palestinian and Muslim, wearing a hijab at the ceremony.

50. Per the custom, practice, and/or policy at the time, Defendants live-streamed and/or recorded for public consumption via a CUNY website and/or CUNY social media account the May 2022 commencement ceremony of the law school, including the speech of the student speaker.

51. The student's speech drew widespread public attention and debate, including condemnation from self-identified Zionists and from right-wing political figures who maligned the speaker and her speech as putatively antisemitic, among other things. The public commentary includes inflammatory labels for this student that reflect anti-Palestinian, anti-Arab, and anti-Muslim racism and dehumanization.

52. On May 27, 2022, Councilwoman Vernikov pulled $50,000 of funding from the law school because of the putative antisemitism of its student speaker's speech and of the BDS resolution supported by both law students and faculty.

53. On May 30, 2022, Defendant Matos disavowed the BDS resolution of the law students and faculty, emphasizing that the viewpoints reflected in it and in the speech of the law school's student commencement speaker "do not represent the views of CUNY or those of the University community as a whole."

54. In June 2022, a committee of the New York City Council, including Councilwoman Vernikov, held a hearing on putative antisemitism within the CUNY system, which Defendant Matos did not attend. He had twice canceled his scheduled appearance at the hearing, and sent, instead, other CUNY officials—which drew public criticism and ire, including from Councilwoman Vernikov, who called for Defendant Matos's immediate resignation if he did not meet with her.

14

55. In July 2022, a group called CUNY Students and Faculty for Equality ("SAFE CUNY") submitted to the New York City Commission on Human Rights, the New York State Division of Human Rights, and the American Bar Association complaints against the BDS resolution supported by the students and faculty of the law school. SAFE CUNY publicized these complaints, which received news coverage.

56. SAFE CUNY advocates for the interests of Zionist students and faculty of CUNY, and its co-founder is Jeffrey Lax, a professor at Kingsborough Community College of CUNY.

57. In March 2023, SAFE CUNY issued and publicized a report on putative antisemitism at CUNY with references to the BDS resolution supported by the law students and faculty and to the May 2022 speech of the law school's student commencement speaker.

_Pro-Palestinian May 2023 Student Commencement Speech and Resulting Public Reactions_

58. For its May 2023 commencement, the law school secured Eric Adams, the Mayor of New York City, as a speaker. During his remarks, many graduating students in the audience stood up and turned their backs to him, in protest for discriminatory and deadly policing in New York City under his leadership.

59. Like the speech of the student speaker at the law school's May 2022 commencement, the speech of the student speaker at the May 2023 commencement included criticism of the state of Israel and support for the lives and freedom of the Palestinian people. Like her predecessor, this student uplifted within her speech the BDS resolution supported by students and faculty of the law school. She also strongly criticized New York City Mayor Adams for the problem of racist policing in New York City. Selected by her graduating classmates, this student speaker was ethnically Yemeni, brown-skinned, and Muslim, wearing a hijab at the ceremony.

60. Per the custom, practice, and/or policy at the time, Defendants live-streamed and/or recorded for public consumption via a CUNY website and/or CUNY social media account the May 2023 commencement ceremony of the law school, including the speech of the student speaker.

61. This student's speech drew more widespread public attention and debate than had that of her predecessor, and the public discourse about it includes more condemnation from self-identified Zionists and from right-wing figures maligning the speech and the speaker to be putatively antisemitic, among other things. Their commentary includes inflammatory labels for this student that reflect anti-Palestinian, anti-Arab, and anti-Muslim racism and dehumanization.

62. On May 30, 2023, the New York Post editorial board published an op-ed blaming Defendants for the speech of the student speaker at the 2023 law school commencement, stating "a new board (and change in administration across the system) is plainly in order."

63. On May 30, 2023, Defendants Matos and Thompson and Defendant members of the CUNY Board of Trustees issued a public statement that maligned as putative hate speech the comments of the student speaker at the 2023 law school commencement.

64. On May 31, 2023, the New York Post quoted CUNY Board of Trustees Defendants Vivolo and Clarke, who promised changes to CUNY graduations responsive to the furor over the 2023 CUNY Law student speaker's remarks.

65. On May 31, 2023, Mayor Adams also chimed in, issuing a public statement maligning as putative hate speech the comments of the student speaker for the law school's May 2023 commencement.

66. In June 2023, Jeffrey Lax, CUNY Kingsborough Professor and founder of SAFE CUNY, chimed in, too—resurrecting the failure of Defendant Matos to appear at a 2022 New York City Council committee hearing concerning putative antisemitism at CUNY. Professor Lax publicly

16

claimed that Defendant Thompson had ordered Defendant Matos not to attend that hearing—which Defendant Thompson publicly disputed.

67. In the summer of 2023, assorted groups called publicly for federal and state probes into putative antisemitism at CUNY, including, respectively, Alums for Campus Fairness, which is a group that asserts and defends the interests of Zionist students, and twenty-one Republican New York State Assemblymen. A former member of the CUNY Board of Trustees also publicly lambasted Defendants Thompson and Matos for not having fired Defendant Setty because of the speech of the student speaker at the 2023 law school commencement.

68. In parallel, a variety of stakeholders publicly addressed Defendants, in order to express their support and defense of the 2023 student speaker. Among them were Jewish Voice for Peace, the Civil Rights Committee of the New York City Bar Association, thirteen civil rights and social justice organizations, the CUNY Professional Staff Congress, and faculty of CUNY Law and assorted other campuses.

69. Much of the support and defense voiced for the 2023 student speaker sounded in bedrock First Amendment principles. But on the heels of this public support for the student speaker followed further public condemnation of her, of others in the CUNY system sharing her viewpoints, and of Defendants—all rooted in the false equivalence that conflates support for Palestinian lives and freedom or criticism of the Israeli state and its practices with anti-Jewish hatred.

70. In August 2023, public outcry arose in response to CUNY's hiring of Marc Lamont Hill to serve as faculty at the CUNY Graduate Center. The controversy tied to his use of "from the river to the sea," which he and other people understand to constitute a call for justice and freedom for Palestinian people and "'not a call to destroy anything or anyone.'"

71. News outlets like The New York Post linked the controversy over Professor Hill's hire with the aftermath of the student-speaker issue of the law school; and, within a few weeks, the President of the CUNY Graduate Center stepped down, generating tenuous praise for Defendant Matos from the likes of Councilwoman Vernikov, who had otherwise called for Defendant Matos's resignation or termination the year prior, following the controversy related to the 2022 CUNY Law student commencement speaker.

72. On August 2, 2023, Defendant Matos met with some community members to discuss with them, among other things, their concerns about CUNY, including the speech of the student speaker of the law school's 2023 commencement.

73. One of the attendees publicly remarked subsequently: "Last weekend, I had the opportunity to ask the CUNY Chancellor directly why there has not been direct consequences for the hate filled graduation speech at the Law school. While I was greatly disappointed with his response, he did pull me aside after for an honest conversation about further concrete actions that will take place to ensure Jewish students can feel safe on campus."

74. On September 12, 2023, a rally convened outside the office of Defendant Matos, organized as part of a campaign entitled #EndJewHatred, which was founded, in part, by The Lawfare Project, an organization that aims to advance and defend Zionism, which it describes as "the civil rights project of the Jewish people." In attendance at the rally were state and local lawmakers, including Councilwoman Vernikov,[7] as well as members of SAFE CUNY and the public.

---

[7] At a different rally a few months later, held for Palestinian lives and freedom, Councilwoman Vernikov attended as a counter-protestor, openly brandishing a pistol "whose butt jutted from her waistband," and doing so notwithstanding a 2022 New York State law that "expressly forbids carrying weapons in so-called sensitive locations, a lengthy list that includes 'gatherings of people to collectively express their constitutional rights to assemble or protest.'"

75. In the lead-up to the rally, the #EndJewHatred campaign articulated and promoted specific goals and demands with respect to CUNY to be emphasized at the rally, including the demand that CUNY "address the systemic Jew-hatred at CUNY Law School" by pushing for the ouster or resignation of Defendant Setty and by "[d]iscontinu[ing] the practice of allowing students to select a commencement speaker." The campaign includes a web-form that the public can use to communicate these and other demands directly to Defendant Matos.

*Denial of Access to Student-Speaker Custom*

76. The next day, on September 13, 2023, within a faculty meeting at the law school, Defendant Setty alluded to the denial of access to the student-speaker custom within law school commencements as of the 2023–24 academic year.

77. The publicly available notes of a member of the law school's student government who attended the meeting shed light on the relevant dynamics and rationales, stating "[i]t is [] clear that CUNY Central has pushed no student speaker, and as a result the Dean does not seem to have much discretion over the administration's position."

78. The notes further convey that the decision had turned, at least in part, on the sense that "[n]o law school commencement can look like last year's," because its aftermath included Defendant Setty's having to deal with media scrutiny, "80 voicemails, 500 pieces of hate mail," losing donors, having to spend many hours a day contending with the law school's image, and needing increased campus security, among other things. The notes also indicate that, according to Defendant Setty, "CUNY Central had to put a lot of time and resources into navigating this," including contending with "numerous investigations," a complaint to the American Bar Association, and lots of freedom-of-information requests.

*Student Efforts Seeking Reinstatement of the Student-Speaker Custom*

79. Over the course of the 2023–24 academic year, many students of the law school, including Plaintiffs, made repeated and ongoing attempts to engage with the law school administration to voice their concerns about the revocation of the student-speaker custom. Among the examples of the students' efforts is a sign-on letter emailed on March 22, 2024, to Defendants Setty and Matos and signed by 81 of approximately 110 graduating full-time students of the law school, 19 graduating part-time students, 73 second-year students, and 57 first-year students.

80. Over the course of the 2023–24 academic year, in his capacity as a co-president of Student Government for the law school, Flynn Ezra Beckman met with Defendant Setty on a near monthly basis. In these meetings, he regularly raised students concerns and reiterated the pleas of Plaintiffs and their peers for restoration of access to the custom of student-selected speakers at the law school's commencement ceremonies. Defendant Setty consistently denied the requests that Flynn conveyed to her seeking the restoration of access to that custom.

81. Additionally, during faculty meetings with Defendant Setty in April 2024 and May 2024— law school faculty urged her to restore students' access to the custom of student-selected speakers at the law school's commencement ceremonies. She remained unpersuaded in those meetings.

82. Notwithstanding the repeated and ongoing efforts of Plaintiffs and their peers to flag their concerns about the denial of access to the student-speaker custom, Defendants have remained unresponsive to those concerns. Many students understand that unresponsiveness to reflect the Defendants' discomfort with on-campus student speech and expressive conduct in support of Palestinian lives and freedom over the course of the 2023–24 academic year and ongoing to date.

*Persevering On-Campus Speech and Expressive Conduct in Support of Palestinian Lives and Notwithstanding Related On-Campus Repression*

83. Over the course of the 2023–24 academic year, student speech and expressive conduct in support of Palestinian lives spanned efforts at the law school including: a Palestine solidarity statement dated October 12, 2023, and signed by over 16 student groups of the law school; a variety of political actions held on and around the law school on/around October 19, 2023; a political action on campus in the form of a "die-in" on October 25, 2023, to bring attention to the over 6,000 people whom the Israeli military had killed in Gaza as of that time; a variety of on-campus political actions held on November 29, 2023; a political action in the form of a sit-in on February 8, 2024; a political action in the form of a walk-out on April 8, 2024; a political action during an event for admitted students on April 20, 2024; and the dissemination of assorted on-campus flyers supporting Palestinian lives and freedom.

84. As students' on-campus speech and expressive conduct supporting Palestinian lives and freedom took place over the 2023–24 academic year, Defendant Setty and her subordinates responded to it in ways that many students and alumni of the law school, including Plaintiffs, consider repressive and otherwise hostile.

85. The responses of Defendant Setty and her subordinates to student flyers supporting Palestinian lives are one example. On at least two occasions (on or around October 17, 2023, and on or around November 29, 2023) students observed members of the campus administration remove from the premises of the law school flyers whose content supported Palestinian lives, while leaving undisturbed similarly situated flyers expressing other viewpoints. On at least one occasion (on or around October 24, 2023), students observed Defendant Setty removing from the law school's premises flyers supporting Palestinian lives. Under Defendant Setty's authority, flyering

policies and their application fluctuated considerably over the course of the 2023–24 academic year. At one point, around mid-January 2024, and after students' on-campus speech and expressive conduct in support of Palestinian lives had gained momentum in the fall 2023 semester, the law school's Office of Student Affairs conveyed to the student body that review and approval by that office would be required for the content of "[a]ll postings, such as flyers, banners, or pamphlets."

86.  The responses of Defendant Setty and her subordinates to third-party efforts over the course of the 2023–24 academic year to suppress, intimidate, and harass law students who support Palestinian lives also concerned many law students, including Plaintiffs. The starkest example involves a doxxing truck that came to the law school campus during the fall 2023 semester.

87. Shortly after midnight on November 2, 2023, several student groups jointly emailed Defendant Setty and the head of campus security for the law school, in order to alert them of students' having learned that, later that day, a third-party doxxing truck would be coming to display large-scale text and images directly in front of the entrance to the law school and with the intention of harassing and intimidating law students supportive of Palestinian lives and freedom.

88. Because they received no response from Defendant Setty or the head of campus security, students brought umbrellas, balloons, posters, and banners to block the video screens on the surface of the doxxing truck, once it arrived, and missed classes to protect one another.

89. Over the course of several hours, the doxxing truck remained parked in front of the law school's entrance, and people associated with it confronted the students aiming to block its images and text; those confrontations included yelling profanities at the students, shoving one student, grabbing the umbrella of another, and taking unsolicited photos and videos of students.

90. At various points while the doxxing truck remained parked outside the law school entrance, Defendant Setty and her subordinates could be seen observing from the law school's lobby the

interactions between the people associated with the truck and the students trying to block its images and text from being seen by those who may harass students identified therein.

91. Plaintiff Hammad is among the students who observed Defendant Setty passively monitoring the doxxing truck, and she spoke to Defendant Setty as Defendant Setty did so. In the course of that exchange in the law school's lobby, Plaintiff Hammad urged Defendant Setty to support students targeted by the doxxing truck, at least by publicly condemning the truck's actions as repressive and discriminatory against students supporting Palestinian lives. Defendant Setty conveyed to Plaintiff Hammad that to honor that request would be too politically fraught and that, at most, Defendant Setty could issue a public statement in support of students' rights to free speech—something Defendant Setty never subsequently did as a direct response to the presence of the doxxing truck and its impacts on students.

92. Since the start of the 2024–25 academic year of the law school, on-campus speech and expressive conduct in support of Palestinian lives and freedom has been ongoing.

93. Plaintiffs and many other students of the law school believe that their on-campus speech and expressive conduct for Palestinian freedom throughout the 2023–24 academic year and to date has led Defendant Setty and the other Defendants to stand firm in their denial of access to the student-speaker custom within law school commencements, for fear that, if given the chance, graduating students of the law school would, again, elect a student speaker to decry the devastating impacts of Israeli state violence on Palestinian lives.[8]

---

[8] Defendant Matos' response to the CUNY Gaza Encampment at the City College of New York supports Plaintiffs' belief. According to public reporting, a call from him to the New York City Police Department ("NYPD") resulted in the violent raid and destruction of the encampment on April 30, 2024, by hundreds of NYPD officers who kettled and enclosed protestors there supporting Palestinian lives and freedom, pepper sprayed them, and used tasers and batons against them.

*Denial of Access to Custom of Live-streaming and/or Recording and Posting of Commencement*

94. On or around April 16, 2024, Plaintiffs and their classmates learned through the publicly available notes of peers in student government that the law school would not be live-streaming or recording and posting the entirety of its commencement ceremonies as of the 2023–24 academic year .

95. Consistent with their other advocacy over the 2023–24 academic year, concerned students of the law school launched a petition in hopes of having student access to that custom reinstated in time for the May 23, 2024, law school commencement ceremony.

96. Defendants did not live-stream or record and make publicly accessible online audio/video of the entirety of the law school's May 23, 2024, commencement ceremony and have not otherwise reinstated access to that custom for future graduates of the law school.

*Varied Harms to Plaintiffs*

97. Defendants have been collaborating to censor and punish disfavored speech and to privilege speech in opposition to it: a violation of Plaintiffs' First Amendment rights, demanding strict scrutiny by this Court.

98. Plaintiffs believe Defendants have been undertaking viewpoint discrimination and retaliation for their predecessors' selection of pro-Palestinian commencement speakers and for on-campus speech and expressive conduct at the law school by them and their peers in support of Palestinian lives and freedom.

99. Plaintiffs and many of their peers, at various times to date, have been visible and/or vocal on the law school campus (i) in their support for Palestinian lives and/or (ii) in their criticism of Israeli state rhetoric, policies, and practices that they consider harmful to Palestinian lives.

100.    The ways in which Plaintiffs and their peers have been visible and/or vocal span publicly offering their viewpoints on Palestine and Israel in the course of classes or discussions on campus, signing onto advocacy letters in support of Palestine that are distributed to the law school administration and other members of the law school community, convening or attending on-campus events concerning Palestine, participating in on-campus political actions concerning Palestine, wearing a kuffiyeh (a checkered scarf associated with Palestine), and/or wearing clothing or jewelry that references Palestine.

101.    Each Plaintiff considers nominating a student speaker for commencement deeply meaningful because the act of nomination enables the nominating student to express their viewpoint about who among their peers would represent the student body well and would offer resonant perspectives relevant to their shared journey as students and to the road ahead of them as advocates—within a unique and singular event marking the culmination of their shared journey at the law school.

102.    Each Plaintiff considers getting to hear from a student speaker at commencement deeply meaningful, no matter which student may speak or what viewpoints they express, because it allows graduating students to hear, within the singular event defining the culmination of their program, from a peer with a personal connection to students' shared law school experience, in contrast to dignitaries and other guest speakers from off-campus whom Defendants invite to speak at the law school's commencement ceremonies.

103.    Each Plaintiff considers the live-streaming and/or recording and posting of the entirety of the law school's commencement ceremonies by CUNY to be important because it offers a crucial chance for family, friends, and loved ones who are otherwise unable to join the event in

person to be recognized by CUNY as integral to the singular celebration of a momentous achievement that, in many instances, their support has enabled.

104.    The denial of access to these customs has distressed all of the Plaintiffs.

105.    Plaintiff Humano reports that the difficulty that the law school faced in securing a venue for its May 23, 2024, commencement "until very late before the ceremony made it impossible to coordinate travel plans with out-of-state loved ones. This, coupled with the denial of recording and live-streaming, condemned the ceremony to be completely inaccessible to those I love most and who made it possible for me to walk the stage."

106.    The denial of access to the commencement customs has been especially painful for Plaintiff Hammad, who is Palestinian. She reports: "It is deeply distressing to know that because the last two graduating classes chose student commencement speakers who asserted my people's right to life and liberation, my class was denied the opportunity to participate in what had been cherished traditions. My identity, my right to life and freedom, and my family's right to life and freedom are somehow controversial to CUNY—advocating for us is considered troublesome and must be silenced. The link makes me feel like there's an air of suspicion over me from the administration and some of my peers, like if it weren't for the previous speakers' statements advocating for my life and people, we still would have been able to access these traditions."

107.    As pled herein, Defendants have made and enforced decisions violating and infringing Plaintiffs' First Amendment rights of freedom of speech, freedom of association, and the right to petition the government for redress of grievances.

108.    By (i) their failure to supervise and intervene, (ii) their procedural support and expressions on behalf of these infringements, and/or (iii) their direct involvement in these infringements, Defendants have revealed a custom and practice of privileging the speech of others

over Plaintiffs' and of retaliation for viewpoints supportive of the lives and freedom of Palestinians and critical of the rhetoric, policies, and/or practices of the state of Israel.

109.     The speeches made by the 2023 and 2022 commencement speakers were First Amendment protected expression on matters of public concern, as are the speech and conduct reflected in the visible and/or vocal on-campus support of Plaintiffs and their peers for Palestinian freedom.

110.     Defendants discriminated against and punished these expressions by (1) taking away Plaintiffs' access to the custom of student-selected speakers at the law school's commencement ceremonies and (2) taking away Plaintiffs' access to the custom of live-streaming and/or recording and posting of the law school's commencement ceremonies.

111.     There was a direct, immediate causal connection between the protected speech and Defendants' adverse actions.

112.     Defendant's censorious actions interfere with Plaintiffs' right to petition the government for redress of grievances, as the 2023 and 2022 speakers' plea for the protection of Palestinians included a request for government action.

113.     Defendants' viewpoint discriminatory and/or retaliatory conduct has been placing the burden on Plaintiffs and their peers to persist in their responsive advocacy, including but not limited to aiding in the preparation of this complaint, and notwithstanding many other burdens on the students' time and energy, arising from their studies, jobs, family obligations, and community obligations.

114.     By denying access to the custom, practice, and/or policy of (1) allowing graduating students to select and hear from a graduating classmate at commencement and (2) live-streaming and/or recording and posting the commencement ceremony for public consumption via a CUNY

website and/or social-media account—Defendant Setty, in concert with or under the influence of the other Defendants, has harmed Plaintiffs Hammad, Horowitz, Hanif, and Humano in connection with their May 23, 2024, law school commencement ceremony.

115.    If Defendants persist in their denials of access to these customs—Defendants will irreparably harm Plaintiffs Wilson, Dessus, Burg, and Desai in connection with their prospective law school commencement ceremonies.

## CAUSES OF ACTION

### First Claim for Relief: 42 U.S.C. § 1983 (First Amendment)
*Denial of Access to the Custom of Selecting Student Speakers for Commencement*

116.    Paragraphs 1–115 of this complaint are herein realleged and incorporated by reference.

117.    All students on public university campuses have the First Amendment right to speak, associate, and petition the government.

118.    The First Amendment binds the State of New York pursuant to the incorporation doctrine of the Fourteenth Amendment. In all of the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

119.    By denying Plaintiffs access to the custom of selecting student speakers for commencement, Defendants violate their First Amendment rights of free speech, association, and petitioning the government.

120.    Denying Plaintiffs access to this custom censors and penalizes them on the basis of the contents and viewpoints of (1) the speech of the student speakers at the law school's May 2023

and May 2022 commencement ceremonies and/or (2) the speech, associations, and/or expressive conduct of Plaintiffs and their peers at the law school.

121.    Viewpoint-based discrimination is presumptively unconstitutional in violation of the First Amendment, in any setting. Its harms are amplified in the university setting because they interfere with long-recognized academic freedom principles.

122.    Even if this custom were to constitute only a designated or limited public forum, Defendants may not deny Plaintiffs access to that forum on the basis of their viewpoints, the viewpoints of their peers, the viewpoints of the student speakers at the May 2023 and May 2022 commencement ceremonies of the law school, or any other imputed viewpoints.

123.    Defendant Setty in her individual capacity, in concert with or under the influence of the other Defendants, has already harmed Plaintiffs Hammad, Horowitz, Hanif, and Humano by denying access to this custom within those Plaintiffs' May 23, 2024, law school commencement ceremony.

124.    If all Defendants in their official capacities do not reinstate access to this custom for Plaintiffs Wilson, Dessus, Burg, and Desai—they will irreparably harm those Plaintiffs in connection with their prospective law school commencement ceremonies.

**Second Claim for Relief: 42 U.S.C. § 1983 (First Amendment)**
*Denial of Access to the Custom of Hearing from a Student Speaker at Commencement*

125.    Paragraphs 1–115 of this complaint are herein realleged and incorporated by reference.

126.    All students on public university campuses have the First Amendment right to speak, associate, and petition the government.

29

127.     The First Amendment binds the State of New York pursuant to the incorporation doctrine of the Fourteenth Amendment. In all of the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

128.     By denying Plaintiffs access to the custom of hearing from a student speaker at commencement, Defendants violate their First Amendment rights of free speech, association, and petitioning the government.

129.     Denying Plaintiffs access to this custom censors and penalizes them on the basis of the contents and viewpoints of (1) the speech of the student speakers at the law school's May 2023 and May 2022 commencement ceremonies and/or (2) the speech, associations, and/or expressive conduct of Plaintiffs and their peers at the law school.

130.     Viewpoint-based discrimination is presumptively unconstitutional in violation of the First Amendment, in any setting. Its harms are amplified in the university setting because they interfere with long-recognized academic freedom principles.

131.     Even if this custom were to constitute only a designated or limited public forum, Defendants may not deny Plaintiffs access to that forum on the basis of their viewpoints, the viewpoints of their peers, the viewpoints of the student speakers at the May 2023 and May 2022 commencement ceremonies of the law school, or any other imputed viewpoints.

132.     Defendant Setty in her individual capacity, in concert with or under the influence of the other Defendants, has already harmed Plaintiffs Hammad, Horowitz, Hanif, and Humano by denying them access to this custom within those Plaintiffs' May 23, 2024, law school commencement ceremony.

If all Defendants in their official capacities do not reinstate access to this custom for Plaintiffs Wilson, Dessus, Burg, and Desai—they will irreparably harm those Plaintiffs in connection with their prospective law school commencement ceremonies.

<u>**Third Claim for Relief: 42 U.S.C. § 1983 (First Amendment)**</u>
*Denial of Access to the Custom of Live-streaming and/or Recording and Posting Commencement Online*

133.    Paragraphs 1–115 of this complaint are herein realleged and incorporated by reference.

134.    By denying Plaintiffs access to the custom of live-streaming and/or recording and posting commencement online, Defendants violate their First Amendment rights of free speech, association, and petitioning the government.

135.    Denying Plaintiffs access to the live-streaming/recording custom censors and penalizes them on the basis of the contents and viewpoints of (1) the speech of the student speakers at the law school's May 2023 and May 2022 commencement ceremonies and/or (2) the speech, associations, and/or expressive conduct of Plaintiffs and their peers at the law school.

136.    Viewpoint-based discrimination is presumptively unconstitutional in any setting. Its harms are amplified in the university setting because they interfere with long-recognized academic freedom principles.

137.    Even if the live-streaming/recording custom were to constitute only a limited or designated public forum, Defendants may not deny Plaintiffs access to that forum on the basis of their viewpoints, the viewpoints of their peers, the viewpoints of the student speakers at the May 2023 and May 2022 commencement ceremonies of the law school, or any other imputed viewpoints.

138.    Defendant Setty in her individual capacity, in concert with or under the influence of the other Defendants, has already harmed Plaintiffs Hammad, Horowitz, Hanif, and Humano by denying them access to this custom in connection with those Plaintiffs' May 23, 2024, law school commencement ceremony.

139.    If all Defendants in their official capacities do not reinstate access to this custom for Plaintiffs Wilson, Dessus, Burg, and Desai—they will irreparably harm those Plaintiffs in connection with their prospective law school commencement ceremonies.

<strong>RELIEF REQUESTED</strong>

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  Declare that Defendants' denial of Plaintiffs' access to the student-speaker and live-streaming/recording customs violates the First Amendment;

B.  Issue injunctive relief requiring Defendants to reinstate these customs for Plaintiffs Wilson, Dessus, Burg, and Desai ahead of their respective commencement ceremonies, unless and until Defendants substantiate a lawful reason for denying those Plaintiffs access to the customs;

C.  Award nominal damages of $1 each to Plaintiffs Hammad, Horowitz, Hanif, and Humano for Defendant Setty's infringement of their rights;

D.  Award Plaintiffs costs of suit, reasonable attorneys' fees, and other reasonable expenses; and

E.  Grant such additional relief to Plaintiffs as the interests of justice may require.

Date: October 18, 2024                         Respectfully Submitted,

                                               */s/ Golnaz Fakhimi*
                                               Golnaz Fakhimi (GF 9791)
                                               Naomi R. Tsu (*pro hac vice*)

Reem Subei (*pro hac vice*)
MUSLIM ADVOCATES
1032 15th Street NW #362
Washington, DC 20005
Tel: (202) 655-2969
golnaz@muslimadvocates.org
reem@muslimadvocates.org
naomi@muslimadvocates.org

*/s/ Jonathan Wallace*
Jonathan Wallace
P.O. Box #728
Amagansett NY 11930
Tel: (917) 359-6234
jonathan.wallace80@gmail.com

*Counsel for Plaintiffs*